Filed 8/21/20  P. v. Robertson CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C080826 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF153616) |
| v. | |
| PATRICK ALLEN ROBERTSON, | |
| Defendant and Appellant. | |

A jury found defendant Patrick Allen Robertson guilty of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1); count 3)[1] against his mother and found true the allegation that in committing the assault, defendant personally used a deadly or dangerous weapon (§ 12022, subd. (b)(1)). The jury also found defendant guilty of false imprisonment with force (§§ 236 & 237, subd. (a); count 2). The trial court subsequently

---

[1] Further undesignated statutory references are to the Penal Code in effect at the time of the charged offenses.

1

found true allegations that defendant was previously convicted of a serious felony (§ 667, subds. (a)(1), (c), & (e)(1)), and served a prior term in prison (§ 667.5, subd. (b)). The court sentenced defendant to an aggregate term of 14 years in state prison.

Defendant raises numerous claims on appeal. First, he claims the trial court abused its discretion and violated his constitutional rights in admitting evidence he previously committed acts of domestic violence against his then pregnant girlfriend. Second, he claims the trial court abused its discretion and violated his constitutional rights in admitting evidence he was previously convicted of battery with serious bodily injury concerning a stranger who interceded in the domestic violence incident involving his girlfriend. (§ 243, subd. (d)). Third, he claims the sentence on his conviction for false imprisonment (count 2) should have been stayed pursuant to section 654. Fourth, in supplemental briefing, defendant also contends in light of the recent passage of Senate Bill No. 1393 (Stats. 2018, ch. 1013, §§ 1-2) (S.B. 1393), this matter must be remanded to permit the trial court to consider whether it should exercise its newly-granted discretion to strike or dismiss the prior serious felony conviction enhancement imposed under section 667, subdivision (a). Fifth, also in supplemental briefing, defendant asserts his prior prison term enhancement under section 667.5, subdivision (b), should be stricken in light of Senate Bill No. 136 (2019-2020 Reg. Sess.) (Stats. 2019, ch. 590, § 1 (S.B. 136)) effective January 1, 2020.

We modify the judgment to reflect that execution of the sentence imposed for defendant's conviction for false imprisonment (count 2) is stayed pursuant to section 654 and strike the section 667.5, subdivision (b) enhancement. As modified, the judgment is affirmed. We will, however, remand the matter for the limited purpose of allowing the trial court to exercise its sentencing discretion under sections 1385 and 667, subdivision (a) to strike or dismiss the prior serious felony conviction allegation.

2

## FACTUAL AND PROCEDURAL BACKGROUND

The prosecution charged defendant with making criminal threats (§ 422), false imprisonment by force (§§ 236 & 237, subd. (a)), and assault with a deadly weapon (§ 245, subd. (a)(1)). The prosecution further alleged that defendant used a deadly weapon when he threatened and falsely imprisoned the victim (§ 12022, subd. (b)(1)), served a prior prison term (§ 667.5, subd. (b)), and was previously convicted of a serious felony (§ 667, subds. (a)(1), (c), & (e)(1)).

### Prosecution's Case

The victim testified that on June 19, 2015, she was sitting on a love seat in her home when defendant arrived so intoxicated she could not understand him. Defendant began "pestering" and "torturing" her. He got a knife from the kitchen and placed the "not sharp" part of the knife about an inch and a half in front of her throat and held her down on the couch. Defendant first held the victim around the waist, pulling her toward him to keep her from leaving, then he sat on her for "a good five minutes." He refused to let her get up, though he was not using the knife to keep her down. Then, defendant's friends knocked on the door and defendant just got up and left with them. She remembered the entire incident lasted about 15 minutes. Afraid that "he'd go out and maybe hurt somebody else," the victim called the police.

The victim testified that she was angry with defendant but not really scared; she did not believe he would hurt her. She said defendant never threatened to cut her throat or kill her. She, however, had "never been treated that way in [her] entire life and [she] wasn't going to accept it." The prosecutor read back a portion of the victim's testimony at the preliminary hearing, when she testified she was scared during the attack. The victim acknowledged that was what the transcript said. But, she said, she had a spinal cord injury and was trying to put the incident out of her mind, thus her memory of it was not as good now as it was at the preliminary hearing.

The victim's prior statements to the responding officer presented a somewhat different picture. West Sacramento police officer Erik Thruelsen was dispatched to the victim's house based on the report of a "family disturbance in which a man was holding a knife . . . to his mother." The victim told Thruelsen that defendant, her son, did not live with her but stayed there often. She told Thruelsen defendant came over with a bottle of liquor and he was both "drunk and high." Defendant yelled at her using "filthy, profane language" and told her she did not love him or care about him.

The victim also told Thruelsen that, at some point, defendant got two butcher knives from the kitchen and said to her, "we're going to sit here all day. I'll kill you if I have to." She said defendant sat on her for about 10 minutes while she struggled to get free; she kept telling him to leave. She described defendant holding a knife over his head, about two to three feet from her, as though he were "going to come down . . . with it in a stabbing motion." There was a moment when defendant turned, that the victim was able to run out of the house with a cell phone and call the police.

The jury heard evidence of recorded telephone calls between defendant and the victim, while defendant was in jail. During those calls, the victim and defendant discussed the attack.

During the first call, the victim told defendant she did not say he put the knife to her throat and she denied telling "them" that defendant threatened to kill her. She told defendant she loved him, but he needed to "straighten up." He said he loved her and wanted to "get out of here." The victim said she would "do everything [she could] to get [defendant] out of there," and would tell the truth: that he did not threaten to kill her and he did not "stick the sharp end of the knife towards [her.]" The two quibbled about the content of their argument on the day of the attack and defendant said he only had a knife because he was going to cut some salami in the kitchen. He also said he did not sit on the victim, but she told him that in fact he did because she remembered "trying to get up."

4

Defendant continued to repeat that he did not threaten her and did not hold a knife to her throat.

During the next call, defendant told the victim that on the night of the attack, he was "a happy go lucky stupid ass drunk, . . . ." He said he was only "joking around." The victim told defendant she "perceived [him] differently." She told him she was scared. Defendant repeated that he never threatened to kill her but "they" were saying that she said he did. The victim told defendant she did not say that and would "try the best [she] can" to get him rehab.

Defendant continued to persist: "I - I know, so, for the record, for me, the other day I talked to you and you said that you never told them that I pointed a knife at you right?

"[THE VICTIM]: I told them you held the knife.

"[DEFENDANT]: I held it and told you to stab me or told you kill me right? Is what I'm saying.

"[THE VICTIM]: I don't remember PJ, I'm old, my memory isn't good and no I'm not taking pills so don't throw that at me again.

"[DEFENDANT]: I'm just talking about this conversation we had the other day where you said no I never told them that and then that was one of the charges and the other one was for saying I said for you to uh, that I would kill you, rather than me saying that I told you to kill me, so.

"[THE VICTIM]: Well, if not PJ, I'm gonna do the best I can and that's all I can do but you have got to straighten out your life and you can't be around me for a while. You can't."

The victim continued to affirm she would only tell the truth, that he did not leave a mark on her. She said she would be more careful with her answers and think more before answering but she would only tell the truth.

## Defense Case

B.T., the victim's sister, testified that the victim had given her several different versions of what happened on June 19th, adding new details each time. First, the victim said defendant sat on her for an hour with a knife to her throat until a friend knocked on the door, then defendant left. In another version, according to B.T., the victim said defendant sat on her with a knife to her throat until someone knocked on the door, then the victim ran out. She said the neighbors called and told her defendant was scaring the kids and crawling through their backyard so the neighbors called the police. In the third version, the victim herself called the police. B.T. asked the victim why she had not told her this before. The victim replied that she did not want to be the mother who turns her son in to the police.

B.T. also testified that, later, the victim told her that defendant did not even have a knife during the incident. The victim never told B.T. that defendant was trying to kill her or that he threatened to kill her.

## Verdicts and Sentencing

The jury found defendant guilty of assault with a deadly weapon and false imprisonment with force or violence. The jury found defendant not guilty of making criminal threats. The jury also found true the allegation that defendant used a deadly weapon to commit the assault. In a bifurcated proceeding, the trial court found true the allegations that defendant was previously convicted of a serious felony/strike offense and served a prior term in prison.

After denying defendant's request to strike the prior conviction under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, the trial court sentenced him to an aggregate term of 14 years in state prison, calculated as follows: four years for assault with a deadly weapon, doubled for the prior strike conviction, plus five years for the prior serious felony conviction and another year for the prior prison term. The court imposed a

6

concurrent term of two years for false imprisonment and stayed the weapons enhancement.

## DISCUSSION

### I. Prior Acts of Domestic Violence

Defendant contends the trial court erred in admitting the evidence of his prior acts of domestic violence as propensity evidence under Evidence Code section 1109. Defendant argues the evidence was not probative because the prior attack did not involve the victim and it was highly prejudicial because defendant's girlfriend was eight-and-half-months pregnant when he attacked her in front of their daughter. We disagree.

### A. Additional Background

The People filed a motion in limine seeking to introduce four separate acts of domestic violence perpetrated by defendant against his former girlfriend J.W. The first three incidents occurred in May 2005, September 2006, and March 2008. The fourth occurred on December 6, 2011.

According to the People's motion, on December 6, 2011, defendant "had been drinking and was jealous." He was verbally abusive to J.W. and his mother, the victim in the instant case, tried to intervene. He told his mother and J.W. he would slit their throats. Scared, his mother went outside. Defendant followed his mother, and J.W. screamed for help. Defendant then "tackled" J.W. and S.H., a stranger, came to J.W.'s aid. Defendant took a swing at S.H., hitting him in the neck and cutting him. Defendant threatened to stab S.H. then ran away. S.H.'s neck continued to bleed from the cut.

At the hearing on the People's motion, the trial court indicated it would not admit the first three incidents because they occurred more than five years prior and did not involve the victim. Defense counsel objected to the admission of the evidence related to the December 6, 2011 incident stating: "I will, for the record, though, object to the 2011 prior, based on [Evidence Code section] 352, due process, and a fair trial as considered by the US Constitution."

7

The court ruled evidence of the December 2011 incident admissible finding it was "more recent in time" and involved a direct threat to the victim here. Thus, the court concluded, the evidence was "highly relevant and outweigh[ed] any prejudice."

At trial, J.W. testified that she and defendant were together for 12 years and had three children together. In December 2011, she and defendant were living with the victim. At the time, J.W. was eight and one-half months pregnant. One day, defendant came home and accused J.W. of having a boyfriend help her move roofing tiles from their desk. He said she and the victim could not have done it themselves because the tiles were "really heavy." J.W. testified that things "escalated from there."

J.W. and defendant continued to argue and "at some point it got physical." The victim ran out of the house, saying she was going to call the police. Defendant ran out after the victim, begging her not to call the police. J.W. tried to leave and defendant "dragged" her back inside by her hair. Then, their eight-year-old daughter tried to leave and he "pulled her back in" as well.

J.W. eventually made it outside. She ran across the street and banged on doors trying to get someone to call the police. No one opened their door; she returned to her front yard where she and defendant continued to argue. At some point, he threatened to cut her throat.

While they were arguing, J.W. ended up on the ground, she could not remember how. Then, "out of nowhere," a man she had never met stepped between J.W. and defendant. J.W. did not hear anything that was said between them. Defendant then drove off in his truck. J.W.'s shirt was ripped but she was not injured.

Defense counsel later renewed his objection to the Evidence Code section 1109 evidence. The court again explained its decision to admit the evidence. The court found similarities between the December 2011 crime and the current incident: both times defendant attacked in his home and he attacked women. In addition, defendant's mother was involved in the December 2011 incident and was the direct victim here. The

8

incidents were not far apart in time and, as a result, defendant still had access to witnesses that might challenge J.W.'s testimony. The court also found the evidence was not misleading and would not distract the jury.

### B.  Analysis

Evidence Code section 1109, subdivision (a)(1), permits evidence of other domestic violence acts to show propensity for domestic violence, so long as the evidence is not made inadmissible by section 352. (Evid. Code, § 1109.) Evidence Code section 352 renders inadmissible evidence of past domestic violence where the prejudicial impact substantially outweighs probative value. (*People v. Johnson* (2010) 185 Cal.App.4th 520, 531 (*Johnson*).) "We review a challenge to a trial court's decision to admit such evidence for abuse of discretion." (*Ibid.*)

The principal factor affecting probative value is the uncharged act's similarity to the charged offense. (*Johnson, supra*, 185 Cal.App.4th at p. 531.) Evidence Code section 1109 "reflects the legislative judgment that in domestic violence cases, as in sex crimes, similar prior offenses are 'uniquely probative' of guilt in a later accusation." (*Johnson*, at p. 532.) Domestic violence is " 'typically repetitive' " in nature. (*Ibid.*)

"Evidence is not inadmissible under section 352 unless the probative value is 'substantially' outweighed by the probability of a 'substantial danger' of undue prejudice or other statutory counterweights." (*People v. Holford* (2012) 203 Cal.App.4th 158, 167.) " ' "[T]he prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. '[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is "prejudicial." The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual *and which has very little effect on the issues.*' " ' [Citations.]" (*Ibid.*) " ' "In other words, evidence should be excluded as unduly prejudicial when it is of such nature

9

as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction." ' " (*People v. Howard* (2010) 51 Cal.4th 15, 32.)

"Relevant factors in determining prejudice include whether the prior acts of domestic violence were more inflammatory than the charged conduct, the possibility the jury might confuse the prior acts with the charged acts, how recent were the prior acts, and whether the defendant had already been convicted and punished for the prior offense(s)." (*People v. Rucker* (2005) 126 Cal.App.4th 1107, 1119.)

We conclude the trial court properly found that the probative value of the propensity evidence was not substantially outweighed by the risk of undue prejudice. Defendant's December 2011 attack on J.W. was highly probative because of the similarities in the attacks. In both incidents defendant attacked women. Both were people with whom he shared a relationship. Both attacks took place in their home. In both attacks, defendant was intoxicated. And both attacks involved false imprisonment. In the 2011 attack, he threatened to cut J.W.'s throat. In the instant case, he wielded a knife at or near the victim's throat. Furthermore, there was no risk the jury would confuse the issues as presented to the trial court; the prior attack was directed towards defendant's girlfriend, the current attack was on his mother.

Defendant argues evidence of his attack on J.W. had no probative value because the victim here, was not his victim in December 2011. Defendant does not cite any authority to support his assertion that the victim in the prior uncharged act of domestic violence must be the same as the victim in the pending matter. Indeed, the law makes no such requirement. (Evid. Code, § 1109; see *Johnson, supra*, 185 Cal.App.4th at pp. 524, 530-532 [different victims, but both were in a relationship with the defendant when he attacked them].)

Defendant also argues the evidence was unduly prejudicial because, through J.W.'s testimony, "the jury learned [defendant] attacked the mother of his third child while she was eight-and-a-half-months pregnant, got into a physical altercation with her, pulled her by her hair and did so in front of his daughter." Such conduct is reprehensible but is not markedly more inflammatory than defendant sitting on his mother, wielding a knife at her. Moreover, J.W. testified that she was not injured during the 2011 attack. And, importantly, the jury also learned defendant already was punished for his attack on J.W.

Thus, on balance, we conclude the trial court did not abuse its discretion in admitting the evidence of defendant's December 2011 attack on J.W.

## II. Prior Battery with Serious Bodily Injury Conviction Related to B.H., the Stranger Who Intervened in the Attack on J.W.

Defendant also contends the trial court abused its discretion in admitting into evidence his January 2012 conviction for battery with serious bodily injury involving S.H. as the victim[2] (§ 243, subd. (d)), pursuant to Evidence Code section 1109 because there was no evidence S.H, "was related to [defendant] as specified in Penal Code section 13700 or Family Code section 6211." Additionally, he argues the error was prejudicial because it left the jury "believing it was a pregnant [J.W.] who [defendant] battered and caused a serious bodily injury, . . . ." Defendant has forfeited this claim on appeal.

### A. Additional Background

After filing their motions in limine with the trial court, the People filed a "notice of People's request of the court to take judicial notice pursuant to . . . § 452/453." Therein, the People gave notice that "at the jury trial, the People will be requesting the

---

[2] Defendant was convicted in January 2012 for the December 2011 attack on J.W. and S.H. He was sentenced on those convictions in February 2012. For clarity and continuity, we will refer to those convictions as the January 2012 convictions.

Court to take judicial notice of the facts contained in Yolo County Superior Court case numbers . . ., and 11-5674 under . . . § 452(d) and 453. Specifically, the People will request that the Court take judicial notice of the Defendant's convictions for . . ., and Penal Code sections 273.5(a) . . . 243(d), and 236/237(a) all felonies, on February 16, 2012." These convictions arose from the December 6, 2011 attack on J.W.

After ruling on the motions in limine, the court addressed the People's request for judicial notice.

"[THE COURT]: Okay. And what you want there is the conviction?:

"[THE PROSECUTOR]: Yes. Felony pleas 273.5(a), 243(d), 236/237(a).

"[THE COURT]: Because it's an 1109, you're automatically going to get into the facts of it, too?

"[THE PROSECUTOR]: Right."

The court, however, did not have the actual documents the People wanted the court to consider. It reserved its ruling but indicated its tentative decision was to grant the request. The court asked defense counsel if he had any argument, counsel responded: "Not that [*sic*] this time. I'll reserve."

Later, during trial, outside the presence of the jury, the court ruled on the People's request: "I am granting the prosecutor's request for judicial notice. And I would read the Court's evidentiary finding, and basically, that is that there was a conviction on February 16th, 2013, for an incident on December 6th, 2011, the defendant was convicted of, and I would read the three Counts and the -- this statutory bold language as to what those counts are. For example, false imprison with force, battery, and serious bodily, infliction of corporeal injury on a parent of the defendant's child."

After a further colloquy with the prosecutor, the court again asked defense counsel if he had any argument. Counsel responded: "No. Submitted."

"[THE COURT]: Okay. All right. So that's what we're going to do on that.

12

At some point -- so, I toyed with the idea of having the prosecutor read the facts, but I'm just going to go ahead and do it.  There's a request for judicial notice, and I'm going to let them know.  And I'll type it up.  It's, basically, what I said, I'll make it part of the record, and it will be the last part of the evidence that we do in [the] People's case, because it will be presented in the People's case.  So I'll do that.  Okay.

"[DEFENSE COUNSEL]:  Your honor, I just wanted to make one record.  I thought about this throughout trial.  At the outset, I'm objecting for the record to 1109 evidence, *in general*, as being -- it violates my client's right to a fair trial under the U.S. Constitution."  (Italics added.)

Near the close of the People's case in chief, the trial court read the following statement to the jury:  " 'The Court hereby takes judicial notice of the fact that the defendant was convicted on February 16, 2012, in Yolo County Superior Court Case No. 11-5674, of three crimes.

" 'One:  Violation [of] Penal Code Section 73.5 [*sic*].  [I]nfliction of corporal injury on parent of defendant's child.

" 'Two:  Violation of Penal Code Section 236, 237, false imprisonment with force or violence.

" 'Three:  Violation of Penal Code Section 243 subdivision D, battery with serious bodily injury.' "

"The date of the incident was December 6th, 2011.  In taking judicial notice, the Court has reviewed and drawn this information from the abstract of judgment, among other certified court records."

Defense counsel raised no objection and the People rested their case.

## B.  Analysis

Defendant now claims the trial court erred in admitting evidence of his prior conviction for battery with great bodily injury under Evidence Code section 1109 because his victim was a stranger to him and, as such, it was not a domestic violence conviction.

13

In the trial court, the only objection defendant arguably raised relative to his January 2012 conviction for battery with serious bodily injury was a constitutional one. Defendant has thus forfeited this new claim on appeal. (See *People v. Marks* (2003) 31 Cal.4th 197, 228 [objection to admission of evidence or exclusion of evidence must be made in the trial court and it must be specific in order to preserve the issue for appeal].)

Even if not forfeited, the contention fails on its merits because the court's error in admitting defendant's prior conviction for battery with serious bodily injury did not prejudice defendant under even the more stringent *Chapman* standard for error, which requires a showing that the error was harmless beyond a reasonable doubt.[3] (*Chapman v. California* (1967) 386 U.S.18, 24 [17 L.Ed.2d 705, 710-711].) Since *Chapman*, our high court has " 'repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.' " (*People v. Geier* (2007) 41 Cal.4th 555, 608.) "The harmless error inquiry asks: 'Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?' " (*Ibid.*; *People v. Livingston* (2012) 53 Cal.4th 1145, 1159.) To determine whether the People have satisfied their burden of proving the error was harmless beyond a reasonable doubt, "we examine the entire record and must reverse if there is a ' " 'reasonable possibility' " ' that the error contributed to the verdict." (*People v. Reese* (2017) 2 Cal.5th 660, 671 (*Reese*), citing *People v. Aranda* (2012) 55 Cal.4th 342, 367.)

The evidence leading to defendant's convictions was significant. Whatever inconsistencies defendant may find in the victim's retelling of the charged events, the critical facts remained the same. Defendant walked into her home. He was intoxicated.

---

[3] The People concede, and we agree, it was error to admit defendant's prior conviction for battery with great bodily injury as propensity evidence under Evidence Code section 1109 because the victim, S.H., was a stranger to defendant.

14

He argued with her. He took at least one knife from the kitchen and wielded it at her in a threatening manner. He held her down for a period of time while she struggled to leave. She was scared.

Whatever variances in the victim's testimony, they were trivial and easily attributable to her failing memory. She said she was trying to forget the event and she had been taking pills of some kind, perhaps related to a spine injury, but was determined to tell the truth as best she could remember.

In addition, the jury knew the details of defendant's December 2011 attack on J.W., through J.W.'s own testimony. They learned defendant had a history of getting intoxicated and attacking women in their home. But they also learned that, despite defendant's conduct on that day, J.W. was not injured; J.W. testified to that. Thus, the knowledge that defendant was convicted of battery with great bodily injury as a result of his conduct that day would not have made the jury more likely to convict him here, even if they thought the conviction stemmed from defendant pulling J.W. back into the house by her hair.

Thus, on this record, we conclude beyond a reasonable doubt, that the error did not contribute to the verdict. (*Reese*, *supra*, 2 Cal.5th at p. 671.) The jury would have found defendant guilty of assault with a deadly weapon and false imprisonment even without evidence of his February 2012 conviction for battery with great bodily injury.

### III. Penal Code section 654

The jury found defendant guilty in count 3 of assault with a deadly weapon and in count 2 of false imprisonment by force. The trial court sentenced defendant on count 3 to four years and on count 2 to a concurrent term of two years and a stayed one-year term on the weapons enhancement as to count 2.

Defendant contends the trial court violated section 654 by not staying the sentence on count 2. He contends both the assault with a deadly weapon and the false

15

imprisonment were part of an indivisible course of conduct with a single intent and objective. We agree.

Section 654 provides in part: "(a) An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

"Case law has expanded the meaning of section 654 to apply to more than one criminal act when there was a course of conduct that violates more than one statute but nevertheless constitutes an indivisible transaction." (*People v. Hairston* (2009) 174 Cal.App.4th 231, 240.) " 'If all of the offenses are incident to one objective, the court may punish the defendant for any one of the offenses, but not more than one. [Citation.] If, however, the defendant had multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct. [Citation.]' [Citations.]" (*Ibid.*) "[T]he purpose of section 654 is to ensure that a defendant's punishment will be commensurate with his culpability." (*People v. Correa* (2012) 54 Cal.4th 331, 341.)

A trial court "is vested with broad latitude" in making the factual determination whether section 654 applies. (*People v. Vang* (2010) 184 Cal.App.4th 912, 915-916.) "A trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld on appeal if supported by substantial evidence." (*People v. Brents* (2012) 53 Cal.4th 599, 618.)

Here, not only was the false imprisonment coextensive with the assault on the victim, but the record reveals that, in falsely imprisoning the victim by sitting on her and holding her close to him, while wielding a knife, defendant's only objective was to keep the victim from leaving. That is to say, the purpose of the assaultive conduct was to

16

commit the false imprisonment. Because the assault and the false imprisonment constituted a single course of conduct involving a singular objective, section 654 prohibits punishment for more than one offense related thereto.

Imposition of a concurrent sentence is punishment and thus precluded by section 654. (*People v. Duff* (2010) 50 Cal.4th 787, 796.) Thus, we conclude it was error for the trial court to impose a concurrent sentence for the false imprisonment conviction (count 2). Execution of that sentence should have been stayed. (*Id.* at p. 796.) We will modify the judgment to reflect that execution of the sentence imposed for defendant's conviction for false imprisonment is stayed pursuant to section 654.

### IV. Sentencing Enhancements

### A. Section 667, subdivision (a) – S.B. 1393

"On September 30, 2018, the Governor signed Senate Bill 1393 which, effective January 1, 2019, amends sections 667(a) and 1385(b) to allow a court to exercise its discretion to strike or dismiss a prior serious felony conviction for sentencing purposes. (Stats. 2018, ch. 1013, §§ 1-2.)" (*People v. Garcia* (2018) 28 Cal.App.5th 961, 971.) Defendant argues in his supplemental brief that the passage of S.B. 1393 requires remand so that the trial court may exercise its newly authorized discretion to strike the allegation in the interests of justice. (§§ 667, subd. (a), 1385, subd. (b)). The People agree that the change in law should be applied retroactively, but argue remand would be futile because the trial court clearly indicated it would not exercise its discretion to strike the prior serious felony conviction. We agree that S.B. 1393 must be applied retroactively (*Garcia*, at pp. 971-973), and we agree with defendant that remand is required.

Remand is required unless the record reveals a clear indication that the trial court would not have reduced the sentence even if at the time of sentencing it had the discretion to do so. (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425 [S.B. 620 firearm enhancement remand].) The record before us does not clearly indicate that the trial court would have declined to strike one or more of defendant's prior serious felony convictions

17

for sentencing purposes if it had the discretion to do so. (Cf. *People v. Jones* (2019) 32 Cal.App.5th 267, 274 [in addition to imposing maximum sentences, the court stated it took "great satisfaction in imposing the very lengthy sentence here today"].) Accordingly, we agree with defendant that remand is appropriate in this case to allow the trial court to exercise its discretion as to whether to strike his prior serious felony conviction for sentencing purposes.

### B.  Section 667.5, subdivision (b) – S.B. 136

In his second supplemental brief, defendant contends the one-year prior prison term enhancement imposed pursuant to section 667.5, subdivision (b), must be stricken pursuant to the amendment to section 667.5, subdivision (b) by S.B. 136. The People concede the issue.

Signed by the Governor on October 8, 2019, and effective January 1, 2020, S.B. 136 amends section 667.5, subdivision (b), to eliminate the one-year prior prison term enhancement except for sexually violent offense convictions. The amended law applies retroactively. (*People v. Petri* (2020) 45 Cal.App.5th 82, 94.) Accordingly, defendant's 667.5(b) enhancement must be stricken.

### DISPOSITION

The judgment is modified to reflect that execution of the sentence imposed for defendant's conviction for false imprisonment (count 2) is stayed pursuant to section 654 and the section 667.5, subdivision (b) prior prison term enhancement must be stricken. The matter is remanded to the trial court with directions to consider whether it is in the interest of justice to strike his section 667, subdivision (a) serious felony conviction allegation pursuant to section 1385, subdivision (b). The trial court is further directed to

18

amend the abstract of judgment accordingly and send a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

_____/s/_____
MURRAY, J.

We concur:

_____/s/_____
RAYE, P. J.

_____/s/_____
ROBIE, J.