Filed 4/5/23  P. v. Waltz CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM LEROY WALTZ,<br><br>Defendant and Appellant. | F083591<br><br>(Super. Ct. No. MCR067568)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Mitchell C. Rigby, Judge.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

A jury convicted appellant William Leroy Waltz of seven counts of arson to forest land in violation of Penal Code section 451, subdivision (c).[1] For all seven counts, the jury found true that appellant committed these crimes when a state of emergency existed (§ 454, subd. (a)(2)). The trial court sentenced appellant to prison for an aggravated term of 23 years.

Appellant raises three claims in this appeal, including an assertion that the trial court improperly enhanced his sentence without the jury making a required finding of fact. We reject most of appellant's claims. However, we agree with the parties that appellant's sentence must be vacated based on a retroactive change in the law. We will remand this matter for resentencing but we otherwise affirm the judgment.

## BACKGROUND

Appellant did not testify on his own behalf at trial and he did not call any witnesses. We summarize the material facts that support appellant's judgment.

The prosecution established that, on August 30, 2020, appellant started fires on private pasture land located in Madera County. The area in question was just under 10,000 acres used for cattle and horses. This land was fenced off and closed to the public. Appellant did not have permission to be on this real property.

On the morning in question, appellant started seven different fires. The first fire was spotted around 7:15 a.m. At around the same time, or shortly thereafter, smoke from other fires was seen at other locations on the property. The smoke from the last fire was not spotted until over an hour later. Over 100 CAL FIRE personnel responded to suppress these seven fires and nearly 700 acres were burned.

---

[1] All future statutory references are to the Penal Code unless otherwise noted.

These fires generally occurred over rough terrain, and all seven fires burned "grassland."[2] Some of the fires were over a mile apart from each other, while others were around a half a mile apart. Two of the fires were only about 36 feet apart.

On the morning in question, appellant was spotted in the vicinity of the seventh fire as CAL FIRE personnel worked in that area. Appellant was with his dog. Appellant appeared "very jittery" as if he were under the influence of drugs. A firefighter asked appellant if he knew how that fire started, and appellant responded that he had started the fires. Appellant was detained that morning by law enforcement officials and he was questioned. His statements were recorded and played for the jury. He admitted that he had started the fires. Appellant indicated he had used a lighter when it was still dark outside.[3] He stated that his lighter was out of fluid and he could only make it spark, which made it harder to start the fires. Appellant appeared tired and disheveled. His dog looked "very tired."

Throughout his various discussions with fire personnel, appellant made bizarre statements. He told a firefighter that he had killed five people in a nearby house. Emergency personnel, however, checked and learned that nobody had been killed in that residence. In a series of other rambling statements, appellant told other officials that he had started these fires because people, drones and vehicles had been chasing him during the night. He said he had been running all night, and he set the fires so he could receive help.

The prosecution established that, at some unknown point, appellant had been camping on the private pasture land without permission.[4] A very used lighter was

---

[2]    Under the Penal Code, "grasslands" is included in the definition of "forest land" for purposes of arson. (§ 450, subd. (b).)

[3]    The sun was up and it was "bright" outside when the fires were first spotted.

[4]    Appellant's campsite was discovered about two months after the fires occurred. Two prescription bottles were located there, and one had appellant's name on it.

recovered from appellant's campsite. It did not have lighter fluid inside it. The grinder wheel on the lighter was very worn, and it only produced a very small spark. An improvised smoking device was also located at the campsite. That smoking device could have been used to ingest some sort of narcotic, such as methamphetamine.

After ruling out other possible causes, an arson investigator opined at trial that all seven fires were probably ignited by an open flame device, such as a lighter. Even without appellant's statements, and based on his own investigation, the arson investigator was "very certain" that arson had caused all seven fires. The investigator believed that the results of his investigation were consistent with appellant's claim that he had started these fires with a lighter that had no fluid.

## DISCUSSION

## I. Appellant's Constitutional Rights Were Not Violated Regarding the Trial Court's Judicial Notice and any Presumed Error is Harmless.

Appellant argues that the trial court issued a directed verdict because it informed the jury that it had to accept as true that a state of emergency had existed when these fires were started. Appellant asserts that this was structural error,[5] requiring automatic reversal of his sentence.

### A. Background.

In the first amended information, the prosecution had alleged that, when appellant had committed these seven acts of arson, a state of emergency had existed in Madera County (§ 454, subd. (a)(2)).

Prior to the presentation of evidence to the jury, the parties argued how this special allegation could be established at trial. The prosecution wanted to introduce into evidence that, when these fires had occurred, states of emergency had existed in

---

[5] An error is considered "structural" when it renders the criminal trial fundamentally unfair or as an unreliable vehicle for determining guilt or innocence. (*Washington v. Recuenco* (2006) 548 U.S. 212, 218–219.)

California both for (1) widespread fires burning statewide and (2) due to COVID-19.  In the alternative, the prosecution asked the trial court to take judicial notice of these facts.[6]  In contrast, the defense was willing to admit that a state of emergency had existed when these crimes occurred in exchange for these special allegations to not go before the jury.  However, the prosecution was unwilling to accept such an admission, wanting instead to present its case.  The court ruled that, despite appellant's willingness to admit these special allegations, the prosecution was entitled to prove these allegations at trial.

Later in the trial proceedings, the prosecution changed its approach and it asked the court to take judicial notice of the Governor's proclamations, and to present those facts to the jury.  The defense objected to that approach, contending that the prosecution was required to prove the special allegations.  The court concluded that it was required to take judicial notice of these proclamations because they were official acts of the executive branch.  Defense counsel asserted that, if the court was going to take judicial notice of these proclamations, then the jury should only hear about the one pertaining to COVID-19.  Defense counsel asserted that the other proclamation would be cumulative and more prejudicial than probative under Evidence Code section 352.  The prosecutor agreed that the court should only inform the jury about the existing state of emergency due to COVID-19.  The parties reached an agreement regarding the specific language the court would use when informing the jury about this state of emergency.

The court informed the jury that it had taken judicial notice regarding the following facts:  On March 4, 2020, the Governor had issued an executive order which

---

**6**     Evidence Code section 452 permits a trial court to take judicial notice of any official act of the executive department of any state.  (Evid. Code, § 452, subd. (c).)  However, Evidence Code section 453 mandates that a trial court "shall" take judicial notice of any matter specified in section 452 if a party requests it and (a) the requesting party gives each adverse party sufficient notice of the request to enable an adequate response and (b) the requesting party furnishes the court "with sufficient information to enable it to take judicial notice of the matter."

had declared a state of emergency in California from COVID-19. This state of emergency had existed in Madera County on the day that these fires had occurred. The jury was told that the Governor's executive order proclaiming a state of emergency was consistent with Government Code section 8625. The jurors were told they had to "accept these facts as true."

On the verdict forms, the jurors were asked to find whether or not appellant was guilty of arson as charged in the seven counts. The jurors were then separately asked to determine whether or not it was true that appellant had committed these crimes during a state of emergency as proclaimed by the Governor pursuant to Government Code section 8625, in violation of Penal Code section 454, subdivision (a)(2). After finding appellant guilty in all seven counts of arson, the jury separately found it true that appellant had committed these crimes during a state of emergency as declared by the Governor.

At sentencing, and because of these true findings, appellant's principal term was enhanced by an additional three years in prison. Likewise, his six subordinate terms were each enhanced by an additional one year in prison (§§ 451, subd. (c), 454, subd. (b)).

**B.**     **Analysis.**

Appellant acknowledges that it was permissible for the trial court to take judicial notice of the Governor's proclamation regarding the state of emergency. According to appellant, however, telling the jury to accept this fact as true violated his federal constitutional rights to have the jury determine a fact that increased his maximum punishment.

We reject appellant's arguments. This issue was submitted to the jury for its consideration. Thus, appellant's constitutional rights were not violated. In any event, any presumed error does not require automatic reversal and respondent has established beyond any reasonable doubt that any presumed error is harmless.

### 1. Appellant's constitutional rights were not violated.

The federal Constitution requires a jury to determine if a criminal defendant is guilty beyond a reasonable doubt of every element of a charged crime. (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 476–477 (*Apprendi*).) This right also applies to any fact (other than the fact of a prior conviction) that increases the penalty for a crime beyond the prescribed statutory maximum. Thus, any fact that increases punishment must be submitted to a jury and proven beyond a reasonable doubt. (*Id.* at p. 490; see also *Cunningham v. California* (2007) 549 U.S. 270, 281.)

California's Evidence Code mandates that a trial court shall take judicial notice of certain facts, including official acts of a state's executive department, if a party makes such a request, the adverse party has sufficient notice of the request, and the requesting party furnishes the court with sufficient information to enable it to take judicial notice of the matter. (Evid. Code, §§ 452, subd. (c), 453.) The Evidence Code further requires a trial court upon request to instruct a jury to accept as a fact any matter that is judicially noticed if it otherwise would have been for determination by the jury. (Evid. Code, § 457.)

Here, the trial court was required to take judicial notice of the Governor's state of emergency. The Governor's proclamation was an official act of the executive department. Moreover, the prosecution gave notice to the defense regarding its intent to ask the court to take judicial notice of this information, and the prosecution provided the court with sufficient information for it to take judicial notice. Thus, the court was obligated to instruct the jury on this fact. (Evid. Code, § 457.)

The court instructed appellant's jurors that, to establish this special allegation, the prosecution had to prove that appellant committed the charged arsons "during and within an area" that the Governor had proclaimed to be in a state of emergency. The jury was told that the prosecution had to prove this special allegation true beyond a reasonable

7.

doubt. Moreover, the court informed the jurors that it was not its role to tell them what their verdicts should be.

Although the trial court told the jurors that they must accept as true that the Governor had declared a state of emergency, the court did not instruct the jury that it must find the special allegation true. Instead, it was the jury's role to decide if appellant had committed any arson and, if so, whether it was appropriate to find true the special allegations in each count. Thus, the requirements in *Apprendi* were met. The jury, and not the judge, ultimately decided whether or not the prosecution had established beyond a reasonable doubt the truth of these special allegations. Therefore, appellant's constitutional rights were not violated and this claim is without merit. In any event, however, we also determine that any presumed error is harmless.

### 2. *Any presumed error is harmless.*

Appellant argues that structural error occurred, requiring automatic reversal of his sentence without the need to analyze prejudice. We disagree.

In general, most federal constitutional errors may be reviewed for harmlessness. (See *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*); *People v. Aranda* (2012) 55 Cal.4th 342, 363.) In contrast, a " 'structural' " error requires automatic reversal. (*People v. Reese* (2017) 2 Cal.5th 660, 668.) A structural error is one that is central to "the trial mechanism—a biased judge, total absence of counsel, the failure of a jury to reach any verdict on an essential element." (*People v. Gamache* (2010) 48 Cal.4th 347, 396.) In other words, a structural error is a defect impacting how a trial proceeds, rather than simply an error in the trial process itself. (*Arizona v. Fulminante* (1991) 499 U.S. 279, 310.)

In the present matter, this presumed error was not a defect in how the trial proceeded. Rather, this was an alleged error that occurred during the trial. Indeed, the United States Supreme Court holds that structural error does not occur when a sentencing

factor is not submitted to a jury. (*Washington v. Recuenco*, *supra*, 548 U.S. at p. 222.) Thus, we reject appellant's assertion that structural error occurred.

The United States Supreme Court holds that *Apprendi* error is reviewable under the harmless error standard of *Chapman*. (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 327.) Under *Chapman*, the question is whether the People can demonstrate that the federal constitutional error was harmless beyond a reasonable doubt. (*People v. Aranda*, *supra*, 55 Cal.4th at p. 367.) In the context of an omitted element leading to *Apprendi* error, a reviewing court asks whether the omitted element is supported by uncontroverted evidence, or whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element. (*Neder v. United States* (1999) 527 U.S. 1, 18–19.)

On its own motion, this court takes judicial notice that, on March 4, 2020, the Governor declared a state of emergency for the entire state due to COVID-19.[7] (See Evid. Code, § 452, subd. (c).) The prosecution had a copy of this proclamation when this matter went to trial.

On its own motion, this court also takes judicial notice that, in October 2022, the Governor announced that the COVID-19 state of emergency will end effective February 28, 2023.[8] (See Evid. Code, § 452, subd. (c).)

It is beyond any reasonable dispute that a state of emergency existed in Madera County when appellant committed these acts of arson. Therefore, we can declare beyond any reasonable doubt that any presumed error was harmless. This record does not contain evidence which could rationally lead to a contrary finding with respect to these

---

[7] Governor Newsom Declares State of Emergency to Help State Prepare for Broader Spread of COVID-19 | California Governor

[8] Governor Newsom to End the COVID-19 State of Emergency | California Governor

special allegations.  Accordingly, it is readily apparent that appellant did not suffer prejudice.  This claim is without merit and reversal is not required.

## II. Due to a Retroactive Change, Appellant's Sentence must be Vacated and this Matter Remanded for Resentencing.

At sentencing in this matter, the trial court followed the recommendations from the probation department and it imposed the maximum possible sentence against appellant, 23 years in prison.  The court imposed an aggravated sentence for the principal arson conviction (count 1), and it imposed consecutive subordinate terms for the remaining six arson convictions.  The parties now agree that, based on a retroactive change in a sentencing law, appellant's sentence must be vacated and this matter remanded for resentencing.

Effective January 1, 2022, Senate Bill No. 567 amended section 1170, subdivision (b).  (Stats. 2021, ch. 731, § 1.3.)  Under this change in law, a court may now impose an upper term sentence only when there are circumstances in aggravation that justify it, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt by the finder of fact.  (§ 1170, subd. (b)(2).)

Respondent concedes that this amendment retroactively applies to appellant.  We agree because this ameliorative change occurred while this matter was still pending on appeal.  (See *In re Estrada* (1965) 63 Cal.2d 740, 745.)  Respondent further concedes that, based on this change in law, this matter should be remanded for resentencing.  We accept respondent's concession.  As noted by respondent, the trial court relied on factors in aggravation to impose the upper term that were neither admitted by appellant nor found true beyond a reasonable doubt by the jury.  Thus, we remand this matter for resentencing in light of Senate Bill No. 567.[9]

---

[9]    As respondent notes, the prosecution must be given the opportunity to satisfy the requirements of section 1170, subdivision (b)(2), when this matter is remanded.  (See

**III.    The Trial Court did not Abuse its Discretion in Imposing Consecutive Sentences.**

Appellant contends that the trial court abused its discretion when it imposed consecutive sentences for all six of the subordinate terms.  According to appellant, he committed the seven acts of arson with the same intent and objective.  He argues that his criminal conduct was a continuous course of action over a brief period of time in the same general area.  He maintains that concurrent sentences are warranted.

In part, respondent asserts that we should not address this claim because we are remanding this matter for resentencing.  Appellant, however, contends that, despite the remand for resentencing, this claim should be resolved because it was raised in his opening brief.  To assist the court and parties on remand, we elect to resolve this claim now.  We disagree that the court abused its discretion.

A trial court has discretion to impose consecutive sentences when a person is convicted of two or more crimes.  (§ 669, subd. (a); *People v. Woodworth* (2016) 245 Cal.App.4th 1473, 1479.)  When discretionary power is statutorily vested in the trial court, we will not disturb the trial court's decision on appeal unless "the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124–1125; see *People v. Williams* (1998) 17 Cal.4th 148, 162 [abuse of discretion review asks whether ruling in question falls outside bounds of reason under applicable law and relevant facts].)

Appellant points to California Rules of Court, rule 4.425.  This rule permits a sentencing court to impose a consecutive sentence if (1) the crimes and their objectives were predominantly independent of each other; or (2) the crimes involved separate acts of violence (or threats of violence); or (3) the crimes were committed "at different times or

_____

*People v. Lopez* (2022) 78 Cal.App.5th 459, 469.)  Alternatively, the People may elect to submit to resentencing based on the state of the current record.  (*Ibid.*)

11.

separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." (Cal. Rules of Court, rule 4.425(a)(1)-(3).) According to appellant, none of these criteria are present. Appellant also argues that the trial court improperly weighed the factors in aggravation and mitigation. He asserts that the court should have given much greater weight to his apparent mental defect or disorder.

Appellant's arguments are unpersuasive. As an initial matter, California Rules of Court, rule 4.425 is only a guideline for a sentencing court, and it does not impose a rigid obligation. (*People v. Calderon* (1993) 20 Cal.App.4th 82, 86–87.) Moreover, only a single factor in aggravation is required for a court to impose a consecutive term. (*People v. Osband* (1996) 13 Cal.4th 622, 728–729.) In fact, absent certain exceptions, any circumstance in aggravation or mitigation may be considered in deciding whether to impose a consecutive sentence.[10] (Cal. Rules of Court, rule 4.425(b)(1)-(3).)

The trial court determined that consecutive sentences were warranted because appellant did not engage in a single period of abhorrent behavior. According to the court, appellant started multiple fires and he had time to reflect between each new act of arson. The court noted that, when appellant encountered fire personnel, he attempted to sic his dog on one of the firemen.[11] According to the court, it appeared that appellant was not seeking assistance from authorities. In addition, the court found that there was a threat of great bodily injury. Nearby residences had to be evacuated. Finally, the fires caused a great loss of value to the property owner.[12] The court noted that appellant "apparently

---

[10] A sentencing court may not consider (1) a fact used to impose an upper term; (2) a fact used to otherwise enhance the defendant's sentence; or (3) a fact that is an element of the crime. (Cal. Rules of Court, rule 4.425(b)(1)-(3).)

[11] When appellant first encountered CAL FIRE at the scene, it appeared that appellant instructed his dog to chase a firefighter, who ran a short distance away.

[12] At sentencing, the trial court noted that appellant's criminal conduct in this matter had cost the property owner about $55,000 in damages.

suffers from a mental defect" that had some impact on his culpability. The court, however, believed that the overall magnitude of his criminal activity warranted the consecutive terms. The court stated it had considered both the aggravating and mitigating factors.

Substantial evidence supports the trial court's determination that appellant did not engage in a single period of abhorrent behavior. Some of these fires were separated by a half of a mile or more over rough terrain. Appellant admitted that he first started the fires when it was still dark outside. However, the last fire was not spotted until about an hour after fire personnel had arrived. When contacted by authorities, appellant and his dog both appeared tired, as if they had been running all night.

The evidence reasonably demonstrates that appellant started these fires over great distances, and those fires were not all started at the same time. Thus, this record amply supports the trial court's finding that appellant had time to reflect on his criminal behavior before he started each fire. Therefore, we reject appellant's contention that substantial evidence did not justify the court's sentencing choice.

Finally, appellant points to other interpretations that can be drawn from the record, such as whether or not he started these fires to summon help from law enforcement or whether his mental state should have been given greater weight as a factor in mitigation. These arguments do not alter our conclusion that the court did not abuse it sentencing discretion. The court considered appellant's mental condition as a factor in mitigation. The court, however, believed that the overall magnitude of his criminal activity warranted the consecutive terms. We must presume that the trial court acted to achieve legitimate sentencing objectives. (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977.)

Although appellant can point to other interpretations that can be drawn from the record, it is inappropriate for us to substitute our own judgment for that of the sentencing court. (*People v. Superior Court* (*Alvarez*), *supra*, 14 Cal.4th at p. 978.) We may

13.

displace the trial court's decision only if there is a clear showing its sentence was arbitrary or irrational.  (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)

Based on this record, the court had ample grounds to determine that consecutive sentences were warranted, and the evidence supports the court's discretionary choice. The court did not exercise its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.  The court's ruling did not fall outside the bounds of reason under applicable law and relevant facts.  Accordingly, an abuse of discretion is not present, and this claim fails.[13]

## **DISPOSITION**

Appellant's sentence is vacated and this matter is remanded for resentencing consistent with Senate Bill No. 567.  In all other respects, the judgment is affirmed.

LEVY, Acting P. J.

WE CONCUR:

SNAUFFER, J.

DESANTOS, J.

---

[13]     We have resolved this claim based on appellant's request to do so before this matter is remanded for resentencing.  However, we take no position regarding how the trial court should exercise its sentencing discretion following remand.

14.