Filed 12/4/25  P. v. Pinedo CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PETE JUNIOR PINEDO,<br><br>    Defendant and Appellant. | F088528<br><br>(Super. Ct. No. BF192527A)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  John D. Oglesby, Judge.

Ashwini Mate, under appointment by the Court of Appeal, for Defendant and Appellant.

Pete Junior Pinedo, in propria persona, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P. J., Peña, J., and Snauffer, J.

On May 28, 2024, a jury found defendant Pete Junior Pinedo guilty of second degree robbery. On that same day, the trial court found the only alleged aggravating factor to be true. Defendant was sentenced to the upper term of five years.

Defendant's appointed counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436, identifying no error and asking us to determine whether there are any arguable issues on appeal. Defendant was afforded an opportunity to submit a letter brief, and he did so. We understand defendant to contend: (1) the verdict is not supported by substantial evidence; and (2) relevant video evidence was "hid[den]" from him. In a subsequently filed letter, defendant requests appointment of new counsel on appeal and for this case to be transferred to the "Kern County Court of Appeals."

We ordered the parties to submit supplemental briefing regarding the following questions:

> "1. Did the trial court violate [Penal Code] section 1170[1] or defendant's right to a jury trial by relying on aggravating factors that were neither pled nor proven pursuant to section 1170, subdivision (b), as recently interpreted by *People v. Wiley* (2025) 17 Cal.5th 1069? [¶] 2. If the trial court erred, was the error harmless? (See *People v. Lynch* (2024) 16 Cal.5th 730, 768.) [¶] 3. Did defendant forfeit the issue by not objecting below? (Compare *People v. Scott* (1994) 9 Cal.4th 331, 353 with *People v. French* (2008) 43 Cal.4th 36, 47.)"

In his supplemental brief, defendant contends the trial court improperly considered aggravating factors that were not pled and proven in imposing the upper term in violation of his Sixth Amendment right to a jury trial on those factors. He further contends the error was prejudicial, and that the error was not forfeited. The People did not submit a supplemental brief.

We conclude the trial court erred in considering aggravating factors which were neither pled nor proven in compliance with section 1170. We vacate defendant's sentence

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

and remand to the court for resentencing in accordance with section 1170, subdivision (b). On remand, the People may elect to prove the circumstances in aggravation in compliance with section 1170, subdivision (b). In all other respects, the judgment is affirmed.

## PROCEDURAL SUMMARY

On December 14, 2023, the Kern County District Attorney filed an information charging defendant with second degree robbery (§ 212.5, subd. (c)). The information also alleged one aggravating factor: that "defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness" (Cal. Rules of Court, rule 4.421(b)(2)).[2]

On February 20, 2024, the trial court held a confidential hearing regarding a concern defendant had with defense counsel's investigation. Defendant alleged, among other things, there was relevant video footage that had not been produced. He also alleged that he told this to defense counsel, but defense counsel kept showing him "this paper that says there's no video footage." According to defense counsel, he spoke to defendant on January 8, 2024, and defendant told him about relevant footage. That same day, defense counsel sent a subpoena to the hardware store where the incident occurred. A week later, he received a letter from the store, stating: "After a recently [*sic*] thorough search, [the hardware store's] investigation revealed no video footage and located no material it can produce pursuant to your request." Defense counsel noted that the incident occurred in December 2022, the preliminary hearing was held in December 2023, and he was assigned the case in 2024. So, by the time he sent the subpoena, the footage did not exist, and he informed defendant of that. The court responded, "Well, that makes sense to me."

---

[2]    All further rule references are to the California Rules of Court.

On April 22, 2024, the trial court held a *Marsden*[3] hearing at which defendant requested appointment of new counsel. After hearing from defendant and defense counsel, the court denied the motion.

On May 28, 2024, a jury found defendant guilty of second degree robbery. On the same day, the court held a bifurcated court trial on the aggravating factor under rule 4.421(b)(2) after defendant waived his right to a jury trial on that factor. After reviewing defendant's RAP sheet, which was introduced by the prosecution, the trial court found the aggravating factor to be true.

On May 31, 2024, defendant filed a motion for a new trial based on the lack of video evidence. The prosecution opposed the motion.

On June 13, 2024, the Kern County public defender filed a motion to be relieved as defendant's attorney because of a conflict of interest. The trial court granted the motion and appointed counsel from the Indigent Defense Program to represent defendant.

On August 15, 2024, the trial court denied defendant's motion for a new trial. The court then proceeded to sentencing. The court stated it had read and considered the probation report. Regarding mitigating factors, the court observed the probation report listed that defendant had a "grant of [p]ost[r]elease [c]ommunity [s]upervision which he satisfactorily complied with" (rule 4.423(b)(15)). The court found this mitigating factor true. Regarding aggravating factors, the court first noted it had already found true the factor under rule 4.421(b)(2), that "defendant's prior convictions as an adult and sustained petitions in juvenile delinquency proceedings are numerous" within the meaning of the California Rules of Court. The court weighed this factor heavily. The court considered three other aggravating factors listed in the probation report: defendant had served two prior prison terms, was on misdemeanor probation when the crime was committed, and his "prior performance on juvenile probation and [p]ost[r]elease

---

[3]     *People v. Marsden* (1970) 2 Cal.3d 118.

[s]upervision was unsatisfactory in that he violated the terms and/or reoffended."[4]  The court imposed an upper term sentence of five years.

On August 19, 2024, defendant timely filed a notice of appeal.

## FACTUAL SUMMARY

On December 8, 2022, B.R. was working as a loss prevention officer at a hardware store.  As he was patrolling the store, he saw defendant.  He recognized defendant because he had dealt with defendant before.  He followed defendant and told defendant to leave because he was not allowed in the store.  As B.R. was telling defendant to leave, defendant was "selecting merchandise."  Defendant grabbed a pair of bolt cutters and concealed them in his pants.  B.R. again told defendant to leave, and he asked defendant to give him the merchandise.

Defendant walked into aisle eight.  B.R. followed defendant and continued to tell defendant to leave and to give him the merchandise.  Defendant grabbed more merchandise and put it in his jacket.  B.R. got in front of defendant and again told him to leave.  At this point they were approximately three feet apart.  Defendant pulled out the bolt cutters, told B.R. to back up, and swung the bolt cutters at B.R.

B.R. backed up because he was afraid defendant was going to hit him with the bolt cutters.  He continued to follow defendant, at a distance, and called 911.  A recording of the 911 call was played for the jury.

Defendant attempted to leave through the customer service door, but the door was locked.  So, he turned around, still holding the merchandise, and left through the emergency exit.  As he left, he dropped some (but not all) of the merchandise.  He

---

[4]  The probation report listed one other aggravating factor:  "[D]efendant was armed with or used a weapon at the time of the commission of the crime, to wit:  bolt cutter.  (Not pled or proven[.])"  The court observed this factor was listed in the probation report but excluded the factor from consideration.

"jumped into" a vehicle with someone who had been in the store with him, and they drove away.

A photograph of the bolt cutters and a photograph of defendant with the bolt cutters were introduced into evidence.[5]

Giselle Andrade, a Bakersfield police officer, responded to the 911 call. By the time she arrived, defendant was gone. However, Andrade was provided a license plate number for the vehicle in which defendant was seen leaving, and she ran a records check on it.

The records check revealed that defendant was the registered owner of the vehicle. It also included an address for defendant, and Andrade responded to that address. Defendant answered the door. Andrade had been shown a photograph of the perpetrator taken from the surveillance video, and defendant "was wearing the exact same clothing that he was wearing in the … photograph." After arresting defendant, Andrade took a photograph of defendant in that clothing. That photograph was introduced into evidence.

## DISCUSSION

As noted above, defendant's appellate counsel filed a *Wende* brief identifying no basis for relief and asking that we review the record to determine whether there were any arguable issues on appeal. After reviewing the entire record pursuant to *Wende*, we directed the parties to submit supplemental briefing addressing whether the trial court violated section 1170, subdivision (b) in sentencing defendant to the upper term sentence. Because we conclude the court erred, and that error was prejudicial, we vacate defendant's sentence and remand the matter to the court for resentencing and to permit the prosecutor an opportunity to prove the circumstances in aggravation in compliance with section 1170, subdivision (b).

---

[5]     The photograph of defendant with the bolt cutters was taken from video footage that was not introduced into evidence.

6.

Defendant raised other issues in his letter brief. Having carefully reviewed the entire record, we conclude that, other than the section 1170 issue, there is no arguable issue on appeal. (*People v. Wende*, *supra*, 25 Cal.3d at pp. 441–443.)

## I. Section 1170

"The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment's due process clause, 'provides that those "accused" of a "crime" have the right to a trial "by an impartial jury." ' " (*People v. Lynch*, *supra*, 16 Cal.5th at p. 742 (*Lynch*); U.S. Const., 6th Amend.) Under the Sixth Amendment, "any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." (*Cunningham v. California* (2007) 549 U.S. 270, 281.) There exists a " 'narrow exception' " which permits a judge to find factors in aggravation based on " 'the fact of a prior conviction.' " (*Erlinger v. United States* (2024) 602 U.S. 821, 838.) Under this exception, "a judge may 'do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of.' " (*Ibid.*)

Section 1170, subdivision (b)(2) provides, in part, that a trial court "may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." This jury trial right is "not merely a state law entitlement, but is constitutionally required for all aggravating facts, other than a prior conviction, relied upon to justify an upper term sentence." (*People v. Wiley*, *supra*, 17 Cal.5th 1069, 1078 (*Wiley*), citing *Lynch*, *supra*, 16 Cal.5th at pp. 755–767.) Consistent with the federal exception, the statute permits the court to consider "the defendant's prior

convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3); *Wiley*, at p. 1079.)

In *Lynch*, our Supreme Court held that, under section 1170, "a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established." (*Lynch*, *supra*, 16 Cal.5th at p. 768.) When such a violation occurs, "[t]he violation is prejudicial unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true all of the aggravating facts relied upon by the trial court to justify an upper term sentence, or that those facts were otherwise proved true in compliance with the current statutory requirements." (*Ibid.*; see *Chapman v. California* (1967) 386 U.S. 18, 24 ["before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt"].)

Here, in imposing the upper term sentence, the trial court relied on four aggravating factors: (1) defendant's prior convictions as an adult and sustained petitions in juvenile delinquency proceedings were "numerous" within the meaning of rule 4.421(b)(2); (2) he had served two prior prison terms (rule 4.421(b)(3)); (3) he was on misdemeanor probation when the crime was committed (rule 4.421(b)(4)); and (4) his prior performance on juvenile probation and postrelease supervision was unsatisfactory in that he violated the terms and/or reoffended (rule 4.421(b)(5)). However, defendant only waived his right to a jury trial on the first aggravating factor. The other three aggravating factors considered by the court were found true in violation of defendant's right to a jury trial on those factors. (*Wiley*, *supra*, 17 Cal.5th at p. 1086, fn. omitted ["a defendant is entitled to a jury trial on all aggravating facts, other than the bare fact of a prior conviction and its elements, that expose the defendant to imposition of a sentence more serious than the statutorily provided midterm"].) Thus, the trial court improperly relied on three unproven aggravating factors. (*Lynch*, *supra*, 16 Cal.5th at p. 768.)

We cannot conclude that these errors were harmless beyond a reasonable doubt. For errors subjected to the *Chapman* standard, it is the People's burden to demonstrate the errors were harmless beyond a reasonable doubt. (See *People v. Reese* (2017) 2 Cal.5th 660, 671 ["Federal constitutional errors subject to harmless error review are reviewed under *Chapman*, which requires us to reverse the conviction unless the People can demonstrate that the error was harmless beyond a reasonable doubt."].) As noted above, the People did not file a supplemental brief in response to our request. In any event, we are not convinced that a trier of fact would have reached the same determinations beyond a reasonable doubt. For instance, whether a rational jury would determine defendant's prior performance on juvenile probation and postrelease supervision was unsatisfactory (rule 4.421(b)(5)) may not be a foregone conclusion considering his prior performance on postrelease supervision was a mitigating factor. (See *Wiley*, *supra*, 17 Cal.5th at p. 1091 [observing the possibility that a jury could disagree as to whether the defendant's overall performance on probation was unsatisfactory given "mixed" performance on probation].)

In sum, we conclude the trial court improperly relied on three unproven aggravating factors, and the error was not harmless beyond a reasonable doubt. We vacate defendant's sentence and remand the matter for any further proceedings on the aggravating factors and for resentencing in accordance with section 1170, subdivision (b).

## II. Issues in Defendant's Letter

We also considered the issues defendant identified in his letter brief. First, defendant argues the verdict is not supported by substantial evidence. Defendant is incorrect.

When evaluating a sufficiency of evidence claim, " 'we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' "

(*People v. Cravens* (2012) 53 Cal.4th 500, 507.) "The test for evaluating a sufficiency of evidence claim is deferential .…" (*People v. Flores* (2020) 9 Cal.5th 371, 411.) "We must presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence." (*People v. Medina* (2009) 46 Cal.4th 913, 919, superseded by statute on other grounds as stated in *People v. Hin* (2025) 17 Cal.5th 401, 441.) "We must also 'accept logical inferences that the jury might have drawn from the circumstantial evidence.' " (*Flores*, at p. 411.) "The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' " (*Cravens*, at p. 508.)

"Robbery is the taking of 'personal property in the possession of another against the will and from the person or immediate presence of that person accomplished by means of force or fear and with the specific intent permanently to deprive such person of such property.' " (*People v. Burney* (2009) 47 Cal.4th 203, 234, superseded by statute on other grounds as stated in *People v. Robertson* (2012) 208 Cal.App.4th 965, 981.) And here, substantial evidence supports each element of this offense.

B.R. testified that, as he was patrolling the hardware store at which he worked, he saw defendant. He recognized defendant because he had dealt with defendant previously. As defendant was "selecting merchandise," he told defendant to leave. Defendant did not leave, and B.R. followed him. B.R. saw defendant grab more merchandise and put it into his jacket. B.R. eventually got in front of defendant and told him to leave, at which point defendant swung the bolt cutters at him. B.R. backed up because he was afraid defendant was going to hit him with the bolt cutters. However, he watched defendant leave, and when defendant left, defendant still had some of the merchandise.

In addition to B.R.'s testimony, a photograph of the bolt cutters was introduced, as was a photograph of the perpetrator with the bolt cutters. B.R. identified the perpetrator in the photograph as defendant. Further, Andrade testified that she contacted defendant, and he "was wearing the exact same clothing that he was wearing in the … photograph."

She took a photograph of defendant after arresting him, and that photograph was introduced into evidence.

Based on the foregoing, substantial evidence supports the verdict.

Defendant also contends that relevant video evidence was "hid[den]" from him. However, defendant directs us to nothing in the record—and our independent review has revealed nothing—to suggest that video evidence was hidden from him. According to defense counsel, defense counsel was not assigned to the case until 2024, and by January 8, 2024, he had sent a subpoena to the hardware store where the incident occurred. By this time, however, over a year had passed since the incident, and the video footage no longer existed.[6] Moreover, there is no evidence in the record that the footage that had existed possessed an exculpatory value that was apparent or that the government acted in bad faith. (See *California v. Trombetta* (1984) 467 U.S. 479, 488–489; *Arizona v. Youngblood* (1988) 488 U.S. 51, 57–58.) Accordingly, this claim fails as well.

In sum, other than the section 1170 issue above, we find no arguable issues on appeal.

As to the requests in defendant's subsequently filed letter, they are both denied. On June 3, 2025, we denied a previous request for appointment of new appellate counsel, and we do so again for the same reason. As to his request for this case to be transferred to the "Kern County Court of Appeals," it is denied because the Fifth Appellate District is the appropriate court to consider defendant's appeal. (Gov. Code, § 69100, subd. (e) ["The Counties of Stanislaus, Tuolumne, Merced, Mariposa, Madera, Fresno, Kings, Tulare, and Kern shall constitute the Fifth Appellate District"]; § 1235, subd. (b) ["An appeal from the judgment or appealable order in a felony case is to the court of appeal for the district in which the court from which the appeal is taken is located"].)

---

[6] Defendant did have appointed counsel as early as December 12, 2022, but the record is silent as to why defendant's previous counsel did not subpoena the video footage.

**DISPOSITION**

Defendant's sentence is vacated.  We remand the matter to the trial court for full resentencing in accordance with section 1170, subdivision (b).  On remand, the People may elect to prove the circumstances in aggravation in compliance with section 1170, subdivision (b).  Defendant's requests for appointment of new counsel on appeal and for this case to be transferred are denied.  In all other respects, the judgment is affirmed.