Filed 3/9/17

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S230259 |
| v. | ) | |
| | ) | Ct.App. 2/8 B253610 |
| KEITH RYAN REESE, | ) | |
| | ) | Los Angeles County |
| Defendant and Appellant. | ) | Super. Ct. No. TA125272 |
| _____ | ) | |

The federal Constitution's equal protection clause compels the government to provide indigent criminal defendants, free of charge, with basic tools for an adequate defense that are available for a price to other defendants. (*Britt v. North Carolina* (1971) 404 U.S. 226, 227 (*Britt*).) Both this court and the United States Supreme Court have long held that one such tool is access to a transcript of prior proceedings. (*Ibid*; *People v. Hosner* (1975) 15 Cal.3d 60 (*Hosner*).) In *Hosner*, we held that an indigent criminal defendant facing retrial is presumptively entitled to a "full" and "complete" transcript of the prior proceedings. (*Hosner*, at pp. 65, italics omitted.) We granted review in this case to consider the Court of Appeal's holding below that *Hosner*'s presumption applies only to transcripts of witness testimony and not to transcripts of opening statements and closing arguments.

We hold that we meant what we said in *Hosner*: An indigent defendant facing retrial is presumptively entitled to a "full" and "complete" trial transcript — and this entitlement extends to counsel's statements. The trial court and Court of

1

Appeal therefore erred when they required defendant to demonstrate why a transcript of the statements was necessary for his defense. But we nevertheless affirm the judgment of conviction, because we also find the error here was harmless beyond a reasonable doubt.

I.

Defendant Keith Ryan Reese is an indigent pro se defendant. He was charged with making criminal threats (Penal Code § 422, subd. (a))[1], possession of a firearm by a felon (§ 29800, subd. (a)(1)), use of a firearm in the commission of making criminal threats (§ 12022.5, subd. (a)) and assault with a firearm (§ 245, subd. (a)(2)). On April 11, 2013, a jury deadlocked on the charges after a five-day trial, and the court declared a mistrial. The court set the retrial for June 6, 2013.

At a pretrial hearing on April 26, the court granted defendant's motion for a "complete record of trial transcripts." The court continued the retrial date to June 10. On June 6, the defendant received a transcript that included all witness testimony from the first trial, but omitted the opening statements and closing arguments. Before trial commenced on June 10, defendant argued that he did not receive the "full set of transcripts which I am entitled to." The trial court responded that it had ordered "all the testimony" and that defendant was "entitled only to the testimony given." Defendant argued that he was "required" to have transcripts of the opening statements and closing arguments so that he "won't make the same mistakes," given that he had a "small amount of time to study a lot." Without hearing from the prosecution, the trial court denied the request and the defendant's motion for a continuance. After a three-day trial, the jury found

---

[1]    All subsequent statutory references are to the Penal Code, unless otherwise noted.

2

defendant guilty on all counts. The trial court then sentenced the defendant to an aggregate sentence of 17 years in state prison.

A divided panel of the Court of Appeal rejected defendant's challenge to the denial of his request for a transcript of the opening statements and closing arguments. The majority recognized that a defendant facing retrial is presumptively entitled to a transcript of the first trial, but held that the presumption applies only to witness testimony. The majority reasoned that a defendant is required to demonstrate a need for other portions of the trial transcript, including opening statements and closing arguments. Concluding that defendant failed to demonstrate any such need, the majority affirmed the convictions.[2] By contrast, the dissent argued that *Hosner*'s presumption applied to counsel's statements as well as witness testimony. Because the prosecution did nothing to rebut *Hosner*'s presumption, the dissent found federal constitutional error.

We granted defendant's petition for review to determine whether the trial court violated his constitutional rights when it denied his request for a transcript of the opening statements and closing arguments from his first trial.

II.

A.

The federal Constitution guarantees indigent criminal defendants a free transcript of trial proceedings for their defense. The high court first announced this principle in *Griffin v. Illinois* (1956) 351 U.S. 12 (*Griffin*), where it concluded that refusing to provide indigent defendants with trial transcripts on appeal violated equal protection. (*Id*. at p. 19.) The decision was grounded on a straightforward principle: that equal protection bars any distinction between

---

[2]     The Court of Appeal did stay defendant's sentence for some of the counts to avoid violating section 654's prohibition on double punishment.

3

criminal defendants on the basis of their economic means. (*Id*. at p. 17.) Because a defendant's financial status bears no rational relation to a defendant's guilt or the need for appellate review, the state could not deny to indigent defendants the opportunity for full appellate review that remained available to defendants who could afford to purchase a transcript. (*Id*. at pp. 18-19.) The court nonetheless found that this principle did not guarantee a complete transcript in all circumstances. Where alternatives to a full transcript suffice to safeguard an indigent defendant's right to effective appellate review, the state is not required to provide a full trial transcript. (*Id*. at p. 20.)

So important is an indigent defendant's right to transcripts of prior proceedings that it applies in misdemeanor cases — even where the defendant is sentenced only to a monetary fine. (*Mayer v. City of Chicago* (1971) 404 U.S. 189, 196-197.) And it applies not only on appeal but where an indigent defendant faces retrial. (*Britt*, *supra*, 404 U.S. at p. 227.) In *Britt*, the court held that an indigent defendant facing retrial has a right to a free transcript of the first trial. In so holding, the court emphasized the importance of two factors that determine whether an indigent defendant's interest in obtaining a transcript of prior proceedings is strong enough to entitle him or her to the transcript: (1) the value of the transcript to the defendant; and (2) the availability of alternative means that would fulfill the same functions as a transcript. (*Ibid*.) In elucidating the first factor, the court rejected any notion that a defendant is required to demonstrate a need for the transcript. Instead, *Britt* concluded that courts could ordinarily assume that a defendant would benefit from the transcript of an earlier trial. (*Id*. at p. 228.) What cannot be assumed — because of the second factor — is that an indigent defendant is automatically entitled to a transcript of the prior proceeding. With the second factor, the court struck a balance that appears calibrated to protect defendants' interests without imposing unnecessary costs on the government:

4

defendants are not required to prove the inadequacy of transcript alternatives, but neither are they entitled to a transcript of the first trial if the substantial equivalent of a transcript exists. (*Id*. at p. 230.) Indeed, because the defendant in *Britt* conceded that such an equivalent existed, the high court affirmed the conviction. (*Ibid*.)

While *Britt* established the basic framework for considering an indigent defendant's claim to the transcripts of a previous trial, the *Britt* defendant's concession prevented the court from fully considering what showing would be required to overcome the defendant's presumption of need for a transcript. We first addressed that issue in *Shuford v. Superior Court* (1974) 11 Cal.3d 903. In *Shuford*, we relied on *Mayer* to hold that, if the defendant is entitled to a transcript, the state bears the burden of showing that a mere portion of the trial transcript (or a transcript alternative) will suffice. (*Shuford*, at p. 907.) Because the defendant in *Shuford* demonstrated a particularized need for the transcript, however, we had no occasion in that case to address the issue raised by *Britt*'s statement that a court can ordinarily assume that indigent defendants benefit from access to a previous trial transcript. We considered this issue and its relationship to *Britt* a year later, in *Hosner*. The question there was whether the "mere facts" of a defendant's indigence and timely request for a transcript presumptively entitled him to one. (*Hosner*, *supra*, 15 Cal.3d at p. 64.) We answered in the affirmative, holding that the federal Constitution's equal protection clause presumptively entitles an indigent defendant facing retrial to a complete transcript of his first trial. (*Id*. at p. 66.)

Our holding in *Hosner* proves important in two respects. First, *Hosner* established that a defendant need not demonstrate any particular need for the transcript, as such a need is presumed. (*Hosner*, *supra*, 15 Cal.3d at p. 65, fn. 4.) Second, *Hosner* reiterated that a defendant "is *presumed*, if he needs a transcript at

5

all, to need nothing less than a complete transcript." (*Id*. at p. 66.) For these reasons, the burden is "on the prosecution to show that the defendant would have an effective defense or appeal with anything less than a complete transcript." (*Id*. at p. 65.) Because the prosecution failed to establish that the available alternatives to a full transcript provided for an effective defense,[3] we held that the trial court's denial of the defendant's request for the full trial transcript had "abridged the defendant's right to the equal protection of the laws." (*Hosner*, 15 Cal.3d at p. 62.)

Given the scope of the equal protection principles we articulated in *Shuford* and *Hosner*, we need look no further than those cases to decide whether the trial court violated defendant's equal protection rights in this case. Before the start of the retrial, defendant requested the entire transcript of his first trial — including the opening and closing statements. Because defendant had the benefit of *Hosner*'s presumption, he was entitled to a full and complete transcript of his first trial unless the prosecution " 'clearly establish[ed] the contrary.' " (*Hosner*, *supra*, 15 Cal.3d at p. 69, quoting *People v. Jones* (1944) 24 Cal.2d 601, 609.) Here — as the People concede — the prosecution made no showing whatsoever that defendant could muster an adequate defense without access to a transcript of the opening and closing statements from his first trial. In fact, the trial court denied the request despite the prosecution never addressing defendant's request. The trial court erred in doing so because the prosecution had done nothing to rebut

---

[3]    The prosecution cited the short time period between the first and second trials, the fact that defendant had the same attorney for both trials, and the availability of an oral transcription of the reporters notes of the first trial. (*Hosner*, *supra*, 15 Cal.3d at pp. 68-69.)

the presumption that defendant had a right to nothing less than a full and complete transcript of his first trial.

In contrast, the Court of Appeal read *Hosner*'s presumption as applying only to transcripts of witness testimony. This led it to conclude that a defendant facing retrial must demonstrate a need for other portions of the trial transcript. But we decline to read *Hosner* so narrowly, because the constitutional interests at stake foreclose any conclusion that *Hosner*'s presumption applies only to witness testimony. In the context of criminal adjudication, the equal protection clause guarantees an indigent defendant's opportunity to mount a similar defense against criminal charges as can a wealthy defendant. (See *Griffin*, 351 U.S. at p. 17 [Equal protection safeguards "the central aim of our entire judicial system — all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American court,' " quoting *Chambers v. Florida* (1940) 309 U.S. 227, 241].) As noted above, *Hosner*'s holding is grounded in this important equal protection principle. (See *Hosner*, *supra*, 15 Cal.3d at p. 62.) It is simply inconsistent with the purpose of this guarantee to distinguish between transcripts of witness testimony and transcripts of counsel's statements — both of which a wealthy defendant is certain to purchase — when determining whether *Hosner*'s presumption applies. For this very reason, we said nothing in *Hosner* to suggest that its framework applied only to transcripts of witness testimony. To the contrary — we described the transcript to which the defendant was presumptively entitled as a "full transcript of *prior proceedings*" and a "complete transcript of his *first trial*," not merely a transcript of witness testimony. (*Id*. at pp. 65-66, original italics omitted, italics added.)

In support of the Court of Appeal's holding, the People cite the high court's statement in *Britt* that the transcript of a previous trial is "assumed" to be valuable to a defendant "in at least two ways: as a discovery device in preparation for trial,

and as a tool at the trial itself for the impeachment of prosecution witnesses." (*Britt*, *supra*, 404 U.S. at p. 228.) According to the People, it follows from this conclusion that opening statements and closing arguments are of lesser importance to an indigent defendant because they are not evidence and therefore not particularly relevant or even useful for discovery or impeachment purposes. Yet *Britt* clearly never purported to offer an exhaustive list of the uses of a trial transcript, nor did it limit an indigent defendant's equal protection interests in the transcript of the previous trial. (*Ibid*. ["in *at least* two ways," italics added].) And for good reason. A transcript is important not solely for its impeachment and discovery value, but also for what it conveys about the prosecution's theory and key arguments. An attorney equipped with such knowledge will be better able to anticipate the prosecution's case and devise ways in which to counter it. Indeed, it may not be until a defense attorney reviews the opening statements and closing arguments that the prosecution's theory emerges. (See *Herring v. New York* (1975) 422 U.S. 853, 862 [It is only during closing argument that "counsel for the parties are in a position to present their respective versions of the case as a whole."].)

The considerable importance of counsel's statements does not imply, however, an equivalence for all purposes between such statements and evidence. The prosecution remains free, of course, to reference these distinctions when attempting to carry its burden of establishing that anything other than a full and complete transcript (including opening statements and closing arguments) suffices to guarantee the defendant an adequate defense. We simply hold here that any differences between a transcript of witness testimony and that of counsels' statements do not justify exempting opening statements and closing arguments from *Hosner*'s presumption of entitlement. The Court of Appeal erred when it held otherwise.

8

B.

Having found federal constitutional error, we must decide if it requires reversal of defendant's conviction. Most federal constitutional errors are subject to harmless error review under *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*). (*Washington v. Recuenco* (2006) 548 U.S. 212, 218.) Not so for those federal constitutional errors deemed "structural," which require automatic reversal without a demonstration of harm to the defendant. (*Ibid*.) In *Hosner*, we held that the erroneous denial of an indigent defendant's motion for a transcript of a prior trial was indeed structural error that required automatic reversal. (*Hosner*, 15 Cal.3d at p. 70.) Defendant argues that this holding requires us to reverse the conviction here regardless of harmless error, while the People argue that *Hosner*'s harmless error holding should be reexamined or, at a minimum, confined to a total denial of the right to a previous trial transcript.

By their very nature, structural errors render a trial fundamentally unfair or an unreliable determinant of a defendant's guilt or innocence. (*Neder v. United States* (1999) 527 U.S. 1, 9.) For an error to be structural, it must affect the entire "framework within which the trial proceeds." (*Arizona v. Fulminante* (1991) 499 U.S. 279, 308, 310 (*Fulminante*).) Accordingly, denials of the right to the attorney of one's choice (*United States v. Gonzalez-Lopez* (2006) 548 U.S. 140), to an unbiased judge (*Tumey v. Ohio* (1927) 273 U.S. 510), and to a valid reasonable doubt instruction (*Sullivan v. Louisiana* (1993) 508 U.S. 275) are all paradigmatic examples of structural errors. By contrast, the high court has defined errors susceptible to harmless error review — so-called trial errors — as errors "in the trial process itself." (*Fulminante*, at p. 310.) A prime example is the erroneous admission of evidence. (*Ibid*.)

Although the question whether a constitutional violation is structural or trial error is generally thought to be categorical, the harmless error status of certain

constitutional violations is neither binary nor fixed.  Certain errors can shift between being structural or subject to harmless error review depending on the nature and extent of the violation.  An especially apt example is the right to counsel, as *Hosner* explicitly connected the right to previous trial transcripts and the right to counsel in its discussion of whether harmless error review was possible.  (*Hosner*, *supra*, 15 Cal.3d at p. 70.)  There can be no question, of course, that the complete absence of counsel is structural error.  (See *Chapman*, *supra*, 386 U.S. at p. 23, fn. 8, citing *Gideon v. Wainwright* (1963) 372 U.S. 335.)  Notwithstanding this fact, the high court has held that the absence of counsel at a critical stage of trial can be subject to harmless error review.  (See *Coleman v. Alabama* (1970) 399 U.S. 1, 10-11 [counsel's absence at preliminary hearing subject to harmless error review, in a case where state law prohibited prosecution from using anything from preliminary hearing at trial].)  Similarly, we have applied harmless error analysis to the temporary absence of counsel during trial.  (See *People v. Ayala* (2000) 24 Cal.4th 243, 269 [applying *Chapman* to erroneous exclusion of counsel during portion of hearing conducted pursuant to *Batson v. Kentucky* (1986) 476 U.S. 79]; *People v. Hogan* (1982) 31 Cal.3d 815, 848-850 [applying *Chapman* where trial court responded to jury inquiry without consulting defense counsel], disapproved on another ground in *People v. Cooper* (1991) 53 Cal.3d 771, 836.)  Various other courts have done the same.  (See, e.g., *Key v. People* (Colo. 1994) 865 P.2d 822, 826-827 [applying harmless error review to defense attorney's absence for scheduling conference with jurors during deliberations]; *U.S. v. Toliver* (3rd Cir. 2003) 330 F.3d 607, 615 [trial court responds to jury inquiry without consulting with defense counsel]; *Vines v. U.S.*

10

(11th Cir. 1994) 28 F.3d 1123, 1129 [attorney briefly absent during witness testimony].)[4] So what matters in determining whether certain violations of law in the adjudicatory process are fully structural or subject to appropriate harmless error review is not only the fact an error occurred, but the nature and extent of it.

In *Hosner*, we concluded it was structural error for an indigent defendant to suffer the near-total[5] denial of a prior trial transcript. The denial of a transcript, we reasoned, "infects" the entire second trial, and an appellate court could only "hypothesize" what effect the transcript of a previous trial would have on the defendant's retrial. (*Hosner*, 15 Cal.3d at p. 70.) Moreover, an automatic reversal rule was required to ensure that the prosecution had an incentive to challenge — before trial — the defendant's right to a transcript. (*Ibid.*) And the defendant's right would be undermined by allowing the prosecution to wait until an appeal to litigate the need for a transcript "disguised under the rubric of 'harmless error.' " (*Id.* at p. 71, fn. 7.) At the same time, we reserved decision on whether a rule of automatic reversal should apply to the erroneous denial of a request for the transcript of other proceedings, such as a hearing on a motion to suppress. (*Ibid.*)

There is no reason for us to depart from *Hosner*'s reasoning with respect to the total — or all-but-total — denial of the right to a previous trial transcript. For those errors, a reviewing court is in no position to assess the effect of the violation: the court cannot know how a second trial might have unfolded had the defendant the benefit of the prior trial transcript. (See *Fulminante*, *supra*, 499 U.S. at pp. 307-308.) Access to the transcript of a previous trial could conceivably affect

---

[4]     We express no opinion on the specific outcomes in those cases but cite them only for the proposition that the absence of counsel can, in some circumstances, be subject to harmless error review.

[5]     The defendant in *Hosner* received the transcript of a portion of his own testimony from the previous trial. (*Hosner*, *supra*, 15 Cal.3d at p. 68.)

every aspect of a retrial, from the trial's most granular subtleties to its overall course. Possession of a transcript gives a defendant facing retrial the potential to impeach each and every witness called at both trials. Evidence that initially seemed overwhelming might have been successfully rebutted, had the defendant's attorney anticipated the government's theory and prepared to argue against it. For these reasons, denial of the right to an entire transcript affects the "entire conduct of the trial from beginning to end" and therefore is not amenable to harmless error review on appeal. (*Id*. at p. 309.)

What does not follow from this conclusion is that the erroneous withholding of *any* portion of a previous trial transcript is automatically structural error. On this issue, the Ninth Circuit held that the partial denial of the right to a previous trial transcript is subject to harmless error review, and suggested that the total denial of the same right would be structural error. (See *Kennedy v. Lockyer* (9th Cir. 2004) 379 F.3d 1041, 1053.) We agree. The wrongful withholding of part of a previous transcript does not affect the "entire conduct of the trial from beginning to end" and thus defy harmless error review. (*Fulminante*, *supra*, 499 U.S. at p. 309.) Rather, when the denial of the right to a previous trial transcript is less than total, appellate courts will often have little difficulty conducting harmless error review. If the missing portions of the transcript cover witness testimony, a court can consider whether the defense was unable to counter that testimony at the retrial (for example by impeaching the witness or witnesses on discrepancies between the testimony offered at each trial). Similarly, if the portion missing is, as in this case, counsel's statements, a court can determine whether the record indicates that the defense attorney failed to anticipate the prosecution's overall theory or its argument as to a specific dispute. What we therefore conclude is that where a defendant is erroneously denied all — or, as in *Hosner*, practically all — of the previous trial transcript, the error is structural. But where a defendant is

12

wrongly denied only portions of the previous trial transcript, the error is amenable to harmless error review.

We must now determine whether the defendant's inability to access a part of the transcript was harmless in this case. Federal constitutional errors subject to harmless error review are reviewed under *Chapman*, which requires us to reverse the conviction unless the People can demonstrate that the error was harmless beyond a reasonable doubt. (*People v. Aranda* (2012) 55 Cal.4th 342, 367 (*Aranda*).) To determine whether the People have carried their burden, we examine the entire record and must reverse if there is a " ' "reasonable probability" ' " that the error contributed to the verdict. (*Ibid*.)

In this case, our review of the record convinces us that the error was harmless beyond a reasonable doubt. The People charged defendant with making criminal threats, possession of a firearm by a felon, and assault with a firearm. The charges arose out of an incident at the home of defendant's mother. The prosecution alleged that defendant's mother called 911 and, once officers arrived, defendant's mother, uncle, and girlfriend all stated that defendant had threatened his mother and girlfriend with a firearm. Both of defendant's trials revolved around two key disputes. First, the three witnesses from the scene all recanted substantial portions of their earlier statements during their trial testimony. Second, the officers recovered a holster in the mother's apartment but did not find any firearm despite searching with a gun-sniffing dog.

Several factors underscore why the error did not contribute to the verdict. The prosecution's case was straightforward and quite similar at the two trials. During his opening statement and closing argument at the first trial, the prosecutor argued that the witnesses recanted to protect defendant and that defendant had hidden the firearm. Defendant, by contrast, argued that the officers had lied about the witnesses' allegations at the scene and that there had never been a gun at all.

13

The People's case during the retrial was not meaningfully different. The prosecutor's opening statement at the second trial previewed an identical theory of the case and explanation for the discrepancy between the witnesses' statements at the scene and on the stand. Each witness again disputed that defendant had threatened his mother and girlfriend at the scene. During closing argument, the prosecutor argued once more that the witnesses had recanted their statements to protect defendant and that defendant had hidden the gun while officers spoke with the witnesses outside the home.

Moreover, the retrial took place just two months after the initial trial, and defendant represented himself both times. There is no indication that defendant failed to anticipate the prosecutor's arguments, or that the constitutional violation otherwise prejudiced his defense. Throughout the retrial, defendant drew out testimony regarding the two central issues in the case: the missing firearm, and the discrepancies between the witnesses' statements. Simply put, nothing in the record suggests that defendant's lack of access to the statement transcripts left him unaware of the prosecutor's theory or the central disputes in the case.

Defendant argues that a full transcript would have left him better able to respond to the government's contention that he hid the gun, and he points to two moments from the second trial as examples of his claimed disadvantage. Our review of the record persuades us, however, that the withholding of the full transcript from the first trial did not prejudice the defense at either moment. First, defendant points to his attempts to compel the presence at trial of Officer Ramirez, who had handled the gun-sniffing dog at the scene. Prior to trial, defendant attempted to compel the presence of Officer Ramirez at trial to help establish that there was never any gun at the scene. The officer was on vacation, however, and the trial court declined to continue the case until his return. Defendant argues that he would have been able to persuade the trial court to continue the case if he had

14

possessed a transcript of the statements from the previous trial. But it is difficult to see what extra force the missing transcript portions would have added to defendant's argument. It is clear that defendant did not need the statement transcripts to understand the significance of Officer Ramirez's potential testimony, as he argued to the trial court that the testimony would establish that there was "nowhere to hide" a gun in the mother's "very small apartment." Nor is there a reasonable probability that the trial court would have been more likely to grant the continuance had defendant pointed to those moments during the prosecution's arguments when it referenced the hidden gun.

Second, defendant points to his cross-examination of Officer Azarte, who supervised the witnesses outside the apartment. Defendant argues that he would have more effectively cross-examined Officer Azarte regarding the missing gun had he possessed a full transcript, but once again it is difficult to see how the defense was prejudiced. As defendant's argument for a continuance proves, he was aware before trial commenced that the existence of the gun would be an important issue. Officer Azarte's direct testimony only further underscored this point, as he testified that the responding officers searched for the gun for "between twenty [or] thirty minutes" without finding it. In fact, defendant cross-examined Officer Azarte at length regarding the abilities of gun-sniffing dogs, which proves that defendant did not need the transcripts of the statements from the previous trial to understand the salience of this issue. There is simply no indication that the missing transcript portions left him unable to develop through Officer Azarte his theory about the existence of a gun.

So we are convinced — beyond a reasonable doubt — that defendant's lack of access to a transcript of opening statements and closing arguments from his first trial did not contribute to the verdict. (*Aranda*, *supra*, 55 Cal.4th at p. 367.)

15

III.

A defendant facing retrial is presumptively entitled to a full transcript of the previous trial — including opening and closing statements.  The Court of Appeal's conclusion to the contrary ignores that transcripts of counsel's statements can be critical to an indigent defendant's ability to mount a defense similar to that available to a wealthy defendant.  What a defendant is not entitled to receive, however, is automatic reversal for the partial denial of the right to a previous trial transcript.  Instead, when — as happened here — defendant is denied only a portion of the transcript, the harmless error rule applies.  Because we find the error harmless in this case, we affirm the judgment of the Court of Appeal.

**CUÉLLAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**

16

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Reese

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 240 Cal.App.4th 592
**Rehearing Granted**

_____

**Opinion No.** S230259
**Date Filed:** March 9, 2017

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** John T. Doyle

_____

**Counsel:**

Esther K. Hong, under appointment by the Supreme Court, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Kathleen A. Kenealy, Acting Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., Shaw McGahey Webb, Michael R. Johnsen, Nima Razfar and Nathan Guttman, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Esther K. Hong
Law Office of E. Hong Inc.
1255 West Colton Avenue, Suite 502
Redlands, CA  92374
(909) 991-5996

Nathan Guttman
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
(213) 897-2390