Filed 1/23/26  P. v. Montanez CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROY MONTANEZ,<br><br>    Defendant and Appellant. | B336623<br><br>Los Angeles County<br>Super. Ct. No. TA159985 |

APPEAL from a judgment of the Superior Court of Los Angeles County, John J. Lonergan, Jr., Judge.  Affirmed.

Steven A. Brody, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

The jury convicted Roy Montanez of shooting Javier Villagrana. The *defense* told the jury the crime was first degree murder. "[F]our times in the head, close grouping, that's first degree murder. They had the intent to murder. So the defense agrees the person who shot Mr. Villagrana committed first degree murder." The sole question thus was *who* shot Villagrana. A witness testified *Montanez admitted* he shot Villagrana. Montanez challenges his conviction. We affirm.

I

We summarize essential facts.

Montanez and Villagrana belonged to Compton Varrio Largo 36. This gang controlled Duron's Market, which ran a gambling operation on the second floor. Montanez managed the operation for the gang, while Villagrana sold drugs there.

Montanez and Villagrana had a falling out. Several irritations contributed to the breakdown. One was financial. Villagrana owed Montanez money but said he would pay only "when he felt like it." Villagrana also yelled at Montanez. Villagrana was mad because Montanez "punked his fucking right-hand man." Moreover, Villagrana reported to the Mexican Mafia that Montanez was concealing profits to avoid the tax the Mexican Mafia charged on earnings. Montanez's view of Villagrana became one of "disgust."

The murder of Villagrana was on October 19, 2019, at 8:09 p.m. Villagrana was in his Compton driveway. Blurry video from nearby cameras showed an assailant run up, take a shooting position, and fire. The shots killed Villagrana.

Mobile phone data showed Montanez was in the vicinity of the murder scene at the time of the murder.

2

After the murder, Montanez went to the home of Jesse Ramirez. Ramirez had known Montanez and Villagrana for a decade. As far as the record reveals, Ramirez was not a gang member. Ramirez lately had been working daily at Montanez's house: building cabinets and fences and installing cameras. Ramirez had been on this job at Montanez's house for a couple of months.

After driving to Ramirez's place, *Montanez told Ramirez he had killed Villagrana.* Montanez said, "I did it. I had to get rid of my problem."

Montanez asked Ramirez to fabricate an alibi for him. Ramirez was "to tell people if they were asking that he [Montanez] was with [Ramirez] that night."

Police arrested Montanez and put him in a cell with two undercover agents—a *Perkins* operation. (See *Perkins v. United States* (1990) 496 U.S. 292.) The unsuspecting Montanez spoke with his "cellmates." Montanez wondered what evidence the police had against him. In this conversation, which we are about to excerpt, Montanez revealed his knowledge that "the homie" had removed prints and DNA from the cartridges that killed Villagrana. In this excerpt, the italics are ours.

"Montanez: It's not what you know, it's what you can prove. . . . They can't prove that I wasn't -- they can't prove nothing. . . . They don't got no murder weapon, the gun I had, had nothing to do with it, nothing.

"Agent: That's what I'm saying. But if you didn't use gloves and you gave them a gun swab, there's where they can go wrong.

"Montanez: But how?

"Agent:  They got -- they can get fingerprints on anything, bro.

"Montanez:  You know, I know -- well, no.  It's not my DNA on there.

"Agent:  Then you're cool.

"Montanez:  It's not my DNA.

"Agent:  You're cool then. . . .  I don't -- look, bro, if you used gloves and you didn't lose -- drop no shells, you're cool.

"Montanez:  But what do the shells have to do [with] anything, *they're clean.  I mean, they're clean.*

"Agent:  *Did you clean them?*

"Montanez:  *The homie did.*

Agent:  Okay, then -- . . . .  I mean, *you sure the homie cleaned them?  You positive?*

"Montanez:  *Uh-huh.*"

The jury convicted Montanez.  His sentence for first-degree murder, with a firearm enhancement, was 35 years to life.

## II

Montanez appeals many issues.  We assume for purposes of analysis that the errors Montanez argues on appeal indeed were errors.  We likewise assume the most exacting standard of review applies.  Under the *Chapman* standard, these assumed errors were harmless beyond a reasonable doubt.  (*Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).)

The familiar *Chapman* standard requires us to reverse the conviction unless the prosecution can demonstrate the error was harmless beyond a reasonable doubt.  We examine the entire record and must reverse if there is a reasonable possibility the error contributed to the verdict.  (*People v. Reese* (2017) 2 Cal.5th 660, 671 (*Reese*).)

We repeat the evidence of guilt. Montanez at trial agreed the killing was first degree murder, meaning the sole issue was identity. There is no evidence at trial some other person was the murderer. The identity evidence against Montanez was crushing. Montanez admitted to Ramirez that he killed Villagrana. Montanez asked Ramirez to create an alibi for him. Montanez also told his *Perkins* cellmates that he knew "the homie" had cleaned the cartridges that killed Villagrana. Montanez had the motive to kill: he was disgusted with Villagrana, who was reporting him to the Mexican Mafia. And Montanez had the opportunity: mobile phone data put him in the vicinity at the crucial time.

Against this evidence, Montanez has little to say on the vital points.

Regarding Ramirez, Montanez tells us that "Jesse Ramirez's testimony that appellant confessed to the crime came only after a police interview in which he stated that he did not know who killed Villagrana, and interviews in which he [Ramirez] stated that he himself would be implicated in the killing because he had touched bullets at appellant's house—an unlikely proposition." Whether Ramirez did or did not touch bullets at Montanez's house, this treatment offers no motive for Ramirez to lie about Montanez. Montanez does not suggest Ramirez was receiving a benefit for his testimony.

It is true, as Montanez charges, that Ramirez was not immediately forthcoming with the police. Ramirez testified he was scared of cooperating because of "fear for my life, I guess, fear for my family." Reluctance to cooperate with law enforcement, however, suggests no reason Ramirez would lie about Montanez's admissions.

5

Concerning the mobile phone data placing him in the vicinity of the murder at the crucial time, Montanez notes he lives in that area. This fact does not negate the inference of opportunity.

Regarding the *Perkins* admission that Montanez knew the "homie" had wiped the cartridges used to murder Villagrana, Montanez on appeal is entirely silent. Neither his opening brief nor his reply brief attempts to reckon with Montanez's own inculpating words.

We describe the errors Montanez assigns to the conduct of his trial to show they were unrelated to the decisive proof of Montanez's identity.

Montanez's first asserted error is that the court failed to limit the testimony of two detectives. Detectives Duarte and Valencia testified they believed Montanez killed Villagrana. Montanez asserts their statements violated the rule that a "witness may not express an opinion on a defendant's guilt." (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 77.) The prosecution responds that Montanez forfeited these claims, and beyond that he opened the door to this testimony by eliciting some of it. The prosecution contends the detectives' thought processes and developing beliefs during the investigation were relevant to rebut Montanez's claim that tunnel vision plagued their investigation.

We assume Montanez's argument has merit and hold the assumed error was harmless beyond a reasonable doubt. The detectives' testimony did nothing to affect Ramirez's testimony that Montanez confessed to murdering Villagrana. Nor did their testimony affect Montanez's own recorded words that he knew "the homie" had cleaned the cartridges that killed Villagrana.

6

Montanez's second argument is that the "trial court erred by failing to give, sua sponte, a 'dual-role' expert and lay witness instruction regarding the testimony of Detective Duarte, violating appellant's federal constitutional right to a fair trial." Relying on Ninth Circuit case law rather than California precedents, Montanez apparently asks us to mandate a new CALCRIM instruction, for he cites no existing CALCRIM instruction he contends should have been given. The prosecution responds that the trial court properly instructed the jury about lay and expert testimony and no further instruction was necessary.

This assumed error was harmless beyond a reasonable doubt. As before, Detective Duarte's testimony had nothing to do with the proof that cemented Montanez's guilt beyond a reasonable doubt.

Montanez's third argument is that the "trial court erred in admitting evidence of weapons and drugs seized in a search of appellant's home that was significantly more prejudicial than probative, and appellant was prejudiced by this error." The prosecution responds that the admission of this evidence was not an abuse of discretion because it had considerable probative value.

The admission of this evidence had an effect on neither Ramirez's report of Montanez's confession to the murder nor Montanez's statement about "the homie." The error, if error it was, was harmless beyond a reasonable doubt.

Montanez's fourth argument is that the "trial court violated appellant's Sixth Amendment rights to cross-examine a witness and to present a defense when it refused to put Enriquez on the stand or to instruct the jury with CALCRIM No. 320."

Who was Enriquez? This requires a bit of explanation.

Antonio Enriquez told police Montanez told Enriquez that he, Montanez, had shot Villagrana. The motive for the murder was that Villagrana wanted to force Montanez out of the gambling operation and that, to that end, Villagrana was spreading the word that Montanez was a child molester.

Enriquez changed his story at the preliminary hearing in this case. At this point, Enriquez testified he remembered nothing about any of this. Enriquez blamed his total memory loss on drugs. When asked whether Enriquez remembered telling police that Montanez admitted to killing Villagrana, Enriquez said, "I don't recall none of this."

Enriquez took yet a third position at the time of trial. Now he refused to say anything at all, based on his claim of a right against self-incrimination. In a hearing outside the presence of the jury, the trial court ruled this claim was unwarranted because there was no factual basis for it. The court therefore held Enriquez in contempt. The court ruled Enriquez was unavailable and admitted his statements to police and testimony from the preliminary hearing. The jury heard these damning statements.

Montanez now contends the trial court erred by refusing to force Enriquez, *before the jury,* to invoke his right against self-incrimination. Montanez claims he thereby lost the opportunity to have the jury draw a negative inference from Enriquez's invalid invocation of the right to avoid self-incrimination, in accordance with CALCRIM No. 320. Montanez tells us that, "[h]ad Enriquez declined to testify in front of the jury, trial counsel would have had the opportunity to argue in closing that he had nefarious reasons for refusing to testify in violation of the

8

court's order, and that his statements to police could therefore be disregarded."

Montanez acknowledges his argument runs counter to *People v. Mincey* (1992) 2 Cal.4th 408, 440–442 (*Mincey*), where the California Supreme Court held it is improper for a trial court to require a witness to be put on the stand to claim the Fifth Amendment privilege in front of the jury, because exercising one's privilege against self-incrimination is not relevant evidence but could allow the jury to make a speculative and unfounded negative inference. Montanez maintains it is possible and proper to distinguish *Mincey*, and he urges us to do so.

The prosecution responds that the trial court properly exercised its discretion to preclude Enriquez from being called before the jury for the sole purpose of allowing the jury to hear him invoke his right against self-incrimination. The prosecution maintains that evidence would be relevant only for the impermissible and speculative inference that Enriquez was the one who killed Villagrana—an inference lacking any support in the record.

We again assume the trial court erred. Again, this assumed error was harmless beyond a reasonable doubt. Evidence from or about Enriquez did not reduce the force of Montanez's admission to Jesse Ramirez. Nor did it affect Montanez's own words that "the homie" cleaned the bullets. Additionally, Enriquez's invalid, opaque invocation of privilege would not have undermined his statement to police more significantly than his preliminary hearing testimony, which was already before the jury, and Enriquez's statement directly implicated Montanez and corroborated Montanez's admission to Ramirez.

9

Montanez finally contends the cumulative effect of the errors he addresses denied him a fair trial. This is incorrect. Beyond a reasonable doubt, these assumed errors, either individually or cumulatively, "did not contribute to the verdict." (*Reese, supra*, 2 Cal.5th at p. 671.)

**DISPOSITION**

We affirm.


WILEY, Acting P. J.


We concur:


VIRAMONTES, J.



SCHERB, J.


10