Filed 6/18/26  P. v. Cooper CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085909 |
| Plaintiff and Respondent, | (Super. Ct. No. SCE422471) |
| v. | |
| JOAN COOPER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Patricia K. Cookson, Judge.  Affirmed.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Andrew Mestman and James M. Toohey, Deputy Attorneys General, for Plaintiff and Respondent.

## I.  INTRODUCTION

A jury found defendant Joan Cooper guilty of robbery (Pen. Code, § 211) after she hit and kicked security guards who tried to stop her from shoplifting from a grocery store.  The trial court placed Cooper on two years' formal probation.  On appeal, Cooper contends the trial court erred by denying her midtrial motion to exclude statements she made to police who questioned her without first advising her of her rights under *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).  Assuming without deciding that the trial court erred in admitting Cooper's statements, we conclude the error was harmless.  Accordingly, we affirm the judgment.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

Around 9:00 p.m. on January 20, 2024, a courtesy clerk at the Vons store in La Mesa saw a woman, later identified as Cooper, put a bottle of alcohol in her backpack.  The clerk radioed his observations to the store supervisor.  The supervisor responded to Cooper's aisle and saw the top of a bottle sticking out of the top of her backpack.  Concerned that Cooper was shoplifting, the supervisor approached Cooper and asked if she needed assistance.  Cooper ignored the supervisor, walked around the checkout area, and headed toward the exit without paying.

A Vons security guard followed Cooper.  He saw the top of a liquor bottle sticking out the top of Cooper's backpack.  The security guard recalled noticing the backpack was empty when Cooper entered the store.  The guard introduced himself as a Vons security guard and instructed Cooper to pay for the merchandise she took.  Cooper kept going.  The guard followed her

outside and confronted her, grabbing at the protruding liquor bottle in her backpack.[1]  Cooper "started being feisty," telling the guard, "You can't stop me" and "leave me alone."  Cooper swung a fanny-pack at the guard and it (or Cooper's hand) hit him in the face.  She then fell to the ground and kicked the guard's legs.

A security guard who patrolled the entire shopping center intervened to help the Vons agent.  Cooper kicked the shopping center guard and ripped his vest.  The backpack fell off Cooper, so the Vons guard picked it up and took it to the supervisor at the customer service counter inside the store.

The Vons guard and supervisor emptied Cooper's backpack, which contained a bottle of whiskey and other groceries.  Cooper reentered the store acting "erratically" and requested her backpack.  Cooper reached for the backpack and the store's "scan gun" and kicked the security guards.  To protect the scan gun, the employees pushed Cooper's backpack and its contents toward her and told her to leave.  The guards coaxed Cooper toward the exit, but instead she went deeper into the store, kicking the shopping center guard along the way.  The Vons agent tried to use Cooper's backpack to lure her outside.  When Cooper kicked the supervisor, the shopping center guard picked up Cooper and took her outside.  Cooper flailed her legs; scratched and spit on the guard and hit him with her fanny-pack; and hit a customer who was entering the store.

The supervisor called 911 and reported that Cooper was "stealing alcohol" and attacking the security personnel.  Several police officers responded.

---

[1]     Defense counsel cross-examined the supervisor and guard about store policy regarding physically contacting suspected shoplifters.

La Mesa Police Department Officer Rafael Gonzalez was one of the responding officers. Footage recorded by his body-worn camera was played for the jury. As we discuss in greater detail below, Cooper admitted to Officer Gonzalez that she was attempting to steal liquor from the store.

The Vons supervisor scanned all the items in Cooper's backpack into Vons's system and determined that some of the items were from Vons and others were not. The value of the Vons items was about $71.

## B.  Procedural Background

The People charged Cooper with one count of robbery.[2]  (Pen. Code, § 211.)  After deliberating for about 38 minutes, the jury returned a guilty verdict.  The trial court placed Cooper on two years' formal probation and stayed a 180-day custodial term pending Cooper's successful completion of a residential substance abuse treatment program.

## III.  DISCUSSION

Cooper contends the trial court erred by admitting her statements to Officer Gonzalez because the questioning constituted custodial interrogation and Officer Gonzalez had not *Mirandized* Cooper before questioning her. Assuming without deciding that *Miranda* error occurred, we conclude allowing the jury to hear Cooper's statements was harmless.

---

[2]    (See *People v. Estes* (1983) 147 Cal.App.3d 23, 28 ["Whether defendant used force to gain original possession of the property or to resist attempts to retake the stolen property, force was applied against the guard in furtherance of the robbery and can properly be used to sustain the conviction"].)

## A. Background

The People's first trial witnesses were the courtesy clerk, store supervisor, Vons security guard, and shopping center security guard. These witnesses testified about the incident as summarized above.

After these witnesses testified, Cooper moved to exclude the statements she made to Officer Gonzalez. Although the trial court was concerned that the defense "wait[ed] so long to file" the motion, the court considered it.

The court watched body-worn-camera footage from Officer Gonzalez and another responding officer. The footage showed three officers follow Cooper on foot as she walked away from them. One officer told Cooper to stop and sit down, and she complied. As the officers reached for Cooper's hands to handcuff her, she resisted and told them to stop. The officer repeatedly explained that Cooper was not under arrest and was only being detained. The officers eventually handcuffed Cooper and patted her down for weapons. During this process, the officers again informed Cooper that she was not under arrest and was only being detained. Cooper volunteered, "They took my sh[**]. They took my stuff." One of the officers responded, "You're just detained right now, we're going to figure everything out." Two of the officers walked away to speak with Vons employees, while Officer Gonzalez stayed with Cooper.

Officer Gonzalez asked Cooper for her name and whether she had identification. Cooper responded, "No, they took it all." She provided her name and date of birth. Another officer brought a backpack from nearby and asked Cooper if it was hers; she said it was. As Officer Gonzalez radioed dispatch about Cooper's biographical information, Cooper continued trying to talk to him.

The substantive conversation between Officer Gonzalez and Cooper is:

Cooper:     'Cause they put hands on me and they're not supposed to.

Gonzalez:   So what's going on today, what happened?

Cooper:     Nothing. It, it, nothing at all. They took my, all my goods out of my f[***]ing backpack that I got from a diff . . . that I got from the Dollar Store.

Gonzalez:   What goods, what goods was that?

Cooper:     Like strawberries and like like my food, like my food.

Gonzalez:   Okay. Where'd you get it at?

Cooper:     The Dollar Store.

Gonzalez:   The Dollar Store? So what happened inside then?

Cooper:     I, I, I was trying to take alcohol maybe.

Gonzalez:   What do you mean, "take"?

Cooper:     I was trying to obtain alcohol. And they . . .

Gonzalez:   Like, what do you mean, "obtain," "take"?

Cooper:     Like I was trying to steal, steal.

Gonzalez:   Okay. And so—

Cooper:     The alcohol, they, they got the alcohol but they still f[***]ing were—

Gonzalez:   Okay.

Cooper:     –they f[***]ing were, they got it back.

Gonzalez:   Okay.

Cooper:     But they were still f[***]ing with me.

Gonzalez:    Okay.

Cooper:      Okay?  And they got it back, but they were still f[***]ing—.

Gonzalez:    So—

Cooper:      And, and it wasn't right.

Gonzalez:    Okay, so you're, so you said you were stealing alcohol—

Cooper:      Yeah, but they got it back.

Gonzalez:    Okay.  And then what happened after that?

Cooper:      They took all my stuff out of my backpack.

Gonzalez:    Okay.  Did, so like, how did this all happen?  Were you fighting with them or something or . . . ?

Cooper:      No, they, they, 'cause they, they saw the alcohol and whatever and they f[***]ing grabbed me. [¶] . . . [¶]And they f[***]ing put their hands on me and they're not supposed to like but, that's fine, like, whatever man, I was in the wrong in the first place but I had, my, my own stuff in my backpack, and they took it all out— [¶] . . . [¶] and they f[***]ing threw it all over the place and you know.

Gonzalez:    Okay.

Cooper:      I mean, the alcohol, yeah.  Fine.

Gonzalez:    Okay.

Cooper:      The, that's, it's yours, it's, it's theirs.

Gonzalez:    All right.

Officer Gonzalez continued to collect Cooper's biographical information and eventually arrested her.

The prosecutor argued that the encounter did not constitute custodial interrogation because Cooper was handcuffed for officer safety and flight risk, and because Officer Gonzalez asked only general open-ended questions.

The trial court denied Cooper's motion to exclude. Although the court was initially "a little concerned about the handcuffs," the court ultimately concluded "there [were] extraneous reasons for it" — "for officer's safety and their investigation" — and "she was walking away, not submitting to commands, and she did initiate the conversation voluntarily." Accordingly, the court found no *Miranda* violation.

The prosecutor called three additional witnesses at trial — two district attorney investigators and Officer Gonzalez. The investigators testified about their unsuccessful attempts to obtain surveillance footage of the incident.

Officer Gonzalez testified briefly to authenticate his body-worn camera footage, about two and a half minutes of which was played for the jury. Officer Gonzalez acknowledged that Cooper exhibited some symptoms of being under the influence of alcohol, but he opined that she responded appropriately to his questioning.

In closing argument, the prosecutor walked sequentially through each witness's testimony about how the incident transpired, beginning with the courtesy clerk and moving on to the supervisor, Vons security guard, and shopping center security guard. The prosecutor then said, "And then on top of that, we have Ms. Cooper's statement to police officers, which we heard this morning. We heard her say, 'I was trying to take alcohol, I was trying to obtain alcohol. I was trying to steal.' "

The defense closing argument focused on the force element of robbery. Counsel argued Cooper used force against the security guards not to prevent them from recovering the whiskey bottle from her, but rather, because a man grabbed an intoxicated woman from behind as she walked alone on a "dark and stormy" night. The attorney cited portions of the body-worn camera footage that showed Cooper explaining she just wanted her property back.

## B. Relevant Legal Principles

"Before they begin custodial interrogation of a suspect, the police have an obligation to deliver *Miranda* warnings . . . . [Citation.] The warning is meant to protect the suspect's privilege against self-incrimination, which is jeopardized by the inherently coercive nature of police custodial questioning." (*People v. Caro* (2019) 7 Cal.5th 463, 491.) "Statements taken in violation of *Miranda* are inadmissible in the government's case-in-chief." (*Id*. at p. 492.)

"The erroneous admission of statements obtained in violation of *Miranda* is reviewed for prejudice pursuant to *Chapman v. California* (1967) 386 U.S. 18 . . . , under which we inquire whether the error may be deemed harmless beyond a reasonable doubt." (*People v. Villasenor* (2015) 242 Cal.App.4th 42, 68 (*Villasenor*); see *People v. Elizalde* (2015) 61 Cal.4th 523, 542; *Arizona v. Fulminante* (1991) 499 U.S. 279, 309.) "Under this standard, the evidence that remains after [statements obtained in violation of *Miranda*] are excluded must not only be sufficient to support the verdict, but must overwhelmingly establish his or her guilt beyond a reasonable doubt." (*Villasenor*, at p. 69.) " '[T]he appropriate inquiry is "not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." ' " (*In re Matthew W.* (2021) 66 Cal.App.5th 392, 410–411, quoting *People v. Quartermain* (1997)

16 Cal.4th 600, 621.)  "The proper test for prejudice requires consideration of not only the evidence that would support the judgment, but also the impact of the inadmissible evidence on the final outcome."  (*People v. Gonzalez* (2012) 210 Cal.App.4th 875, 884 (*Gonzalez*).)  "To determine whether the People have carried their burden, we examine the entire record and must reverse if there is a ' " 'reasonable possibility' " ' that the error contributed to the verdict."  (*People v. Reese* (2017) 2 Cal.5th 660, 671.)

## C.  Analysis

Based on our independent review of the entire record, we conclude any assumed *Miranda* error in admitting Cooper's statements to Officer Gonzalez was harmless beyond a reasonable doubt.

The overwhelming majority of the prosecution's evidence against Cooper was testimony from firsthand witnesses who saw Cooper put a whiskey bottle in her backpack, walk out of the store without paying, and then hit and kick security guards who attempted to recover the stolen merchandise from Cooper.  The Vons supervisor also testified that the store's scanner established that the whiskey and certain other items in Cooper's backpack originated from Von's inventory.  In short, the evidence that Cooper stole the merchandise — the primary incriminating aspect of her statement to Officer Gonzalez — was overwhelming apart from her admission to the officer.

Understandably, then, Cooper's trial defense focused on her use of force against the security guards.  On cross-examination, defense counsel explored whether store policy authorized the use of force to restrain a suspected shoplifter.  Defense questioning also probed the specific circumstances under which the Vons guard first physically contacted Cooper.  In closing argument, the defense argued that the "fight" in this case "all boils down to" whether

Cooper used force with the specific intent to retain possession of someone else's property.[3]  Indeed, Cooper conceded she was guilty of petty theft but maintained she was not guilty of robbery.  Similarly, Cooper acknowledges in her opening brief on appeal that "the central issue in this case was whether [Cooper] used force to retain the item with the intent to deprive when she struggled with the security guard."  Cooper's statements to Officer Gonzalez shed no light on her use of force.

Further minimizing any potential prejudice from the assumed *Miranda* error is the fact the prosecutor placed very little emphasis at trial on Cooper's statements to Officer Gonzalez.  The officer testified at the end of the prosecution case for a total of about 16 minutes, including playing the approximately two-and-a-half-minute excerpt from his body-worn camera footage and about five minutes of cross-examination.  Additionally, the prosecutor barely mentioned Cooper's statements during closing argument — in a closing argument spanning nine pages of the reporter's transcript, the prosecutor's references to Cooper's statements take up only four lines.  (Cf. *People v. Diaz* (2014) 227 Cal.App.4th 362, 384 ["Compounding the prejudice caused by allowing the jury to view the videos, the prosecutor referred to the videos five times during closing argument."]; *People v. Cahill* (1993) 5 Cal.4th 478, 505 ["although in some cases a defendant's confession will be the centerpiece of the prosecution's case in support of a conviction, in many instances it will be possible for an appellate court to determine with

---

3    Defense counsel referenced the sixth element of CALCRIM No. 1600, which states:  "When the defendant used force or fear, (he/she) intended (to deprive the owner of the property permanently/ [or] to remove the property from the owner's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of the property)."

confidence that there is no reasonable probability that the exclusion of the confession would have affected the result"]; *People v. Gonzales* (2013) 56 Cal.4th 353, 391 [concluding erroneous admission of evidence was harmless where, among other things, "in his closing argument, the district attorney did not emphasize the evidence affected by the trial court error"].)

On this record, we conclude "the evidence that remains after [Cooper's statements to Officer Gonzalez] are excluded [is] not only . . . sufficient to support the verdict, but . . . overwhelmingly establish[es] . . . her guilt beyond a reasonable doubt." (*Villasenor, supra,* 242 Cal.App.4th at p. 68.)

## IV.  DISPOSITION

The judgment is affirmed.


RUBIN, J.

WE CONCUR:


McCONNELL, P. J.


DO, J.